**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0175-17T3

MICHAEL BUTTACAVOLI,

    Plaintiff-Appellant,

v.

UNIVERSAL DENTISTRY, PA,
DR. ROBERT DENMARK, and
DR. TRELLA DUTTON,

    Defendants-Respondents,

and

SCHAEFLEN MANAGEMENT,
LLC, and JOHN SCHAEFER,

    Defendants.

_____

Submitted April 4, 2019 – Decided May 21, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0049-17.

Michael Buttacavoli, appellant pro se.

Lewis Brisbois Bisgaard & Smith LLP, attorneys for respondent University Dentistry, PA (Walter H. Swayze, III and John M. Borelli, of counsel and on the brief).

Law Offices of Steven J. Tegrar, attorneys for respondent Trella Dutton, DDS (Michael L. Lazarus, of counsel and on the brief).

Stahl & De Laurentis, PC, attorneys for respondent Robert Denmark, DMD (Michael C. Pacholski, on the brief).

PER CURIAM

In this dental malpractice matter, plaintiff Michael Buttacavoli appeals from the July 27, 2017 and June 22, 2018 Law Division orders dismissing his complaint and amended complaint with prejudice against the defendants, a dentist and a periodontist, for failing to comply with the Affidavit of Merit (AOM) statute, N.J.S.A. 2A:53A-27. Because we agree with the trial court that the common knowledge exception was inapplicable, and an AOM was required as to each defendant, we affirm.

I.

On January 18, 2010, plaintiff underwent a dental examination at defendant Universal Dentistry, P.A., ("Universal") and expressed an interest in having a dental implant for tooth number fourteen. Defendant, Dr. Trella Dutton, recommended plaintiff undergo a consultation with defendant, Dr.

Robert Denmark, a periodontist, to consider other options, such as a bridge placement or a removable partial denture.

On July 12, 2011, Denmark evaluated plaintiff in Dutton's presence. Denmark advised plaintiff that if a dental implant was inserted for tooth number fourteen, as well as teeth numbers three and four, lateral wall sinus lifts[1] and guided bone regeneration[2] would be required since there was insufficient bone for osteotome sinus lifting. Denmark further advised plaintiff that these procedures would need to be performed by an oral surgeon, an option which plaintiff declined. Instead, he elected to proceed with a fixed bridge.[3]

---

[1] Lateral wall sinus lifts are procedures used when "[l]ack of sufficient bone height along maxillary sinus poses significant difficulty for placement of implants in edentulous maxillary jaw." The procedure is minimally invasive. S. M. Balaji, Direct v/s Indirect Sinus Lift in Maxillary Dental Implants, US National Library of Medicine National Institutes of Health, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3814663/ (last visited Apr. 24, 2019).

[2] Guided bone regeneration is a surgical procedure that uses barrier membranes with or without particulate bone grafts or/and bone substitutes to help regenerate bone. Jie Liu and David G. Kerns, Mechanism of Guided Bone Regeneration: A Review, US National Library of Medicine National Institutes of Health, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4040931/ (last visited Apr. 23, 2019).

[3] "Fixed [i]mplant [b]ridges utilize dental implants placed in the jawbone (the foundation) and tooth-like porcelain restorations to replace missing teeth (fixed bridge). In addition to preserving the jawbone and surrounding teeth, bridges

A-0175-17T3

Dutton prepared an upper round maxillary bridge for plaintiff, and at his August 10, 2011 visit, informed him "the most common risk with the type of treatment I rendered [is] the necessity for a root canal and decay at the margins." Plaintiff alleges that Dutton omitted the fact that "after this treatment, you commit to bridges [for] the rest of your life," and also alleges Dutton did "not reveal risks and complications of the treatment, such as infection from microleakage." Plaintiff had a follow-up visit on August 16, 2012, to have his upper round house bridge tapped off and re-cemented. During that visit, Dutton learned that the bridge was loosened at another dental office that plaintiff went to for a cleaning. In an effort to address this problem, Dutton discussed placement of a lower bridge with plaintiff.

Following another evaluation with Dutton on February 21, 2013, plaintiff consented to having a fixed lower bridge constructed for teeth numbers twenty-one through twenty-seven. The bridge was completed and inserted at that visit. Plaintiff contends the bridge led to his developing dental infections.

_____

can help maintain the shape of [the] smile and prevent future dental complications." The Dental Implant Center, Fixed Implant Bridges (non-removable), https://www.dentalimplantcenter.com/fixed-bridges-non-removable/ (last visited Apr. 24, 2019).

A-0175-17T3

Plaintiff alleges that on December 5, 2016, he became aware of "complications that caused severe misery and financial loss," because of his inability to make an "optimum choice regarding treatment[,] and if offered complete and truthful information[, he] would have rejected defendants['] remedy." Plaintiff filed suit on January 11, 2017, naming Dutton and Universal as defendants. In his initial complaint, he requested "dental service fees" in the amount of $18,651, plus $3,000 for "misery," and "pending dental service fees" in the amount of $49,969, plus $9,000 for "sickness and ill health."

The complaint and amended complaint allege defendants were negligent for failing to provide plaintiff with informed consent about the "increased probability of infection with dental bridges" and that they misrepresented the "high-risk" nature of the implant procedure. He claims Dutton never advised him of the risk of potential root canals and infections that may emanate from dental implants, and Denmark failed to disclose accurate information relative to the success rate of implants. Had this information been disclosed, plaintiff asserts he would have declined dental implants. Plaintiff claims a dental assistant employed by Universal "offered a fixed bridge in lieu of implants," that would give him a "perfect smile" and lessen the risk of infection associated with dental implants. Being "ultra health-conscious," he chose the bridge over the

5

implants. Universal defaulted, and plaintiff obtained a default judgment against it on March 27, 2017, which was vacated by an order dated January 5, 2018.[4]

Dutton denied plaintiff's allegations, and contended there are signed informed consent forms in his chart initialed by plaintiff, evidencing plaintiff was advised of the risks of the proposed treatment plan. The first consent form is dated July 5, 2011, and another consent form was signed for plaintiff's lower bridge on February 21, 2013. In Dutton's answer to the complaint filed on March 16, 2017, an AOM was demanded. Instead of providing an AOM, plaintiff served a letter dated April 20, 2017 from Dr. Bob Harris, a doctor of dental surgery, licensed in North Carolina to practice dentistry, who is plaintiff's current treating dentist. The letter does not comport with the AOM statute since it is not attested to or notarized, does not state that Dutton's professional services fell below recognized standards of care, and simply comments that "the entire proposition is based on informed consent[.]" Dr. Harris stated he "was not present for any of that and cannot speak for this."

---

[4] The January 5, 2018 order also dismissed John Schaefer (improperly referred to as James Schaefer) and Schaeflen Management, LLC with prejudice, by consent.

Dutton moved for summary judgment based upon plaintiff's failure to serve an AOM, arguing Dr. Harris's letter is conjecture and does not satisfy the delineated requirements of the AOM statute. Judge David W. Morgan granted Dutton's motion on July 27, 2017, noting "plaintiff contends [Dutton] presented egregious misrepresentations . . . . But nowhere, either in his complaint or in his opposition, does he state what those misrepresentations are. He doesn't provide anything as to what the informed consent information would have been that would have fit into the common knowledge." The judge aptly found:

> [P]laintiff has more of an obligation than just to use the word common knowledge to demonstrate that this might be considered a common knowledge case . . . . he's basically saying, look, the doctor told me this or omitted something, he doesn't say what, and I basically went on with the course of treatment only to find out later that something else was true, he doesn't tell us what that is; and then said, had I known that, I would have rejected the treatment as provided.
>
> And so that all requires an expert to tell us what the details were that should have been provided, what the standard was as to what should have been provided, what was provided[,] and how that would constitute a deviation from the standard of care.

Thereafter, plaintiff filed an amended complaint on January 16, 2018, naming Universal and Denmark as defendants. Judge Timothy W. Chell held a

7

<u>Ferreira</u>[5] conference on May 4, 2018, and advised plaintiff of his obligation to serve an appropriate AOM and offered him a sixty-day extension to do so, but plaintiff declined, stating, "I waive my right to submit an AOM" and "[i]f you are waiting for an AOM, you will be wandering in the desert." The judge entered an order memorializing what transpired at the conference and indicated that plaintiff had to serve an AOM as to Denmark by May 21, 2018. On May 22, 2018, Denmark filed a motion to dismiss the amended complaint with prejudice because plaintiff failed to serve an AOM. In opposition, plaintiff argued that an AOM was unnecessary because his claim was based on informed consent. Following oral argument on June 22, 2018, Judge Chell granted Denmark's motion finding "informed consent cases require expert testimony absent an admission by defendant[,]" citing <u>Darwin v. Gooberman</u>, 339 N.J. Super. 467, 476 (App. Div. 2001), <u>abrogated by</u> <u>Couri v. Gardner</u>, 173 N.J. 328 (2002). The judge further held:

> <u>Darwin</u> and other New Jersey case law on this issue make it clear that informed consent, generally, is viewed as a breach of professional responsibility. Informed consent is a negligence concept predicated on the duty of a physician to disclose to a patient information that will . . . enable the patient to evaluate knowledgeably the options available and the risks

---

[5] <u>Ferreira v. Rancocas Orthopedic Assocs.</u>, 178 N.J. 144, 151 (2003).

attendant upon each before subjecting that patient to a course of treatment.

Here, plaintiff's case goes directly to . . . Denmark's assessment of a potential dental implant procedure. Plaintiff alleges misrepresentations of the risks of that procedure. The question of whether . . . Denmark correctly informed plaintiff of the risks of a dental implant procedure is a question that . . . requires a determination if the information provided deviated from a standard of care or sound medical judgment.

This [c]ourt finds that plaintiff is, essentially, asserting a negligence or malpractice claim. It is not clear from . . . plaintiff's submissions if plaintiff is asserting that this is a common knowledge or res ipsa loquitur exception to the [AOM] requirement. Assuming arguendo, the plaintiff is making these claims, the [c]ourt is, also, forced to reject those claims.

A jury could infer a defendant's negligence where, A, the occurrence, itself . . . ordinarily bespeaks negligence; B, the instrumentality was within defendant's exclusive control; and, C, there is no indication in the circumstances that the injury was the result of plaintiff's own voluntary act or negligence.

The [c]ourt finds that plaintiff's claim fails on the first prong of this . . . . [And] require[s] proof of a deviation from a professional standard of care . . . . [And] plaintiff has failed to provide an [AOM] despite being . . . given every reasonable opportunity to do so.

On appeal, plaintiff maintains that the two judges erred in concluding AOM's were required because "the common knowledge of the jury can render justice," because "[t]he issue is not about the practical aspects of standard of

A-0175-17T3

care . . . [it] is about negligent communication," and "extraordinary circumstances" make it impossible to satisfy the AOM statute. Defendants counter, as they did in the trial court, that plaintiff's contentions "are beyond the common knowledge of a layperson," and Denmark's opinion that plaintiff required "lateral wall sinus lifts and bone grafts," "strike at the heart of professional judgment" requiring an AOM. We agree.

II.

The AOM statute requires a plaintiff filing suit against a licensed professional to have the case evaluated by an appropriately licensed person who will then attest under oath, "that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27. "The stated purpose of the AOM statute is laudatory—to weed out frivolous claims against licensed professionals early in the litigation process." Meehan v. Antonellis, 226 N.J. 216, 228 (2016) (citation omitted). The other primary concern, which together constitutes the AOM statute's "dual purpose," is permitting "meritorious claims to proceed efficiently through the litigation process . . . ." Id. at 229; Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 395

(2001), superseded by Affidavit of Merit Statutory Amendment L. 2001, c. 372, § 1, N.J.S.A. 2A:53A-26 to -29, as recognized in Meehan, 226 N.J. at 228.[6] Therefore, the AOM's objective is to "require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious," Shamrock Lacrosse, Inc. v. Klehr, Harrison, Harvey, Branzburg Ellers, LLP, 416 N.J. Super. 1, 14 (App. Div. 2010), not to prove, at this stage, the allegations in the complaint. The statute is not concerned with whether a plaintiff can actually prove the allegations of the complaint, but only whether a threshold showing of merit can objectively be made. Hubbard, 168 N.J. at 394.

Our Supreme Court has recognized an exception to the affidavit requirement in professional negligence cases in which it is not necessary for plaintiff to present an expert to establish the standard of care or a deviation from that standard: the common knowledge exception. Id. at 390. In common knowledge cases, the alleged negligence is unrelated to technical matters peculiarly within the knowledge of practitioners within the defendant's field. Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961). Common knowledge cases are thus treated as ordinary negligence actions in which the jury can supply the

_____

[6] Although the statutory amendment was enacted after the Hubbard case, the amendment aligns with, and indeed reflects, the Legislature's intent, and the Hubbard Court's interpretation of the AOM statute as a whole.

applicable standard of care "from its fund of common knowledge" and assess "the feasibility of possible precautions which the defendant might have taken to avoid injury to the plaintiff." Id. at 142. The common knowledge exception allows meritorious claims to go forward without forcing a plaintiff to incur the expense of hiring an expert to submit an affidavit when no expert is needed at trial. See Hubbard, 168 N.J. at 395.

The Court has cautioned, however, that the exception must be construed "narrowly in order to avoid non-compliance with the statute." Id. at 397. Accordingly, the doctrine has been applied only

> in circumstances involving obvious errors: a dentist's extraction of the wrong tooth, Hubbard, [168 N.J. at 396]; the erroneous hookup of equipment that resulted in the pumping of gas, rather than the fluid that ought to have been used, into the patient's uterus, [Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 460, 471 (1999)]; and the use of caustic solution, rather than the soothing medication intended to treat a patient's nose after surgery, Becker v. Eisenstodt, [60 N.J. Super. 240, 242-46] (App. Div. 1960).
>
> [Bender v. Walgreen E. Co., 399 N.J. Super. 584, 590 (App. Div. 2008) (holding common knowledge exception applies to pharmacist filling prescription with a drug other than the one prescribed).]

Determining whether a matter alleges professional negligence, thus requiring an AOM, or ordinary negligence fitting within the common knowledge

A-0175-17T3

exception, demands scrutiny of the legal claims alleged. Couri, 173 N.J. at 340-41 ("It is not the label placed on the action that is pivotal but the nature of the legal inquiry."). "If jurors, using ordinary understanding and experience and without the assistance of an expert, can determine whether a defendant has been negligent, the threshold of merit should be readily apparent from a reading of the plaintiff's complaint." Hubbard, 168 N.J. at 395. Accordingly, a judge must consider "whether a claim's underlying factual allegations require proof of a deviation from a professional standard of care," or ordinary negligence, as only the former claims are subject to the statutory requirements. Couri, 173 N.J. at 341.

The exercise of the mandated close scrutiny of claims to determine the applicability of the common knowledge exception was exhibited by this court in Bender. There, we held that an AOM was not required as to the pharmacist's alleged filling of a prescription with a drug other than the one prescribed, as that error of substitution was a clear and obvious deviation evincing ordinary negligence. Bender, 399, N.J. Super. at 591. In contrast, we held that the plaintiff's failure to provide an AOM was fatal as to his claims based on the pharmacy-defendant's "failure to recognize the impropriety of the dosage" of the substituted drug "and failure to provide adequate information or warnings." Id.

at 592. We held that an AOM was required because those claims needed to be established by way of the testimony of an expert, to speak to whether the care, skill, and knowledge of the defendant "fell outside acceptable professional or occupational standards or treatment practices." Ibid. (quoting Hubbard, 168 N.J. at 390). As has been stated, "common knowledge cases involve obvious or extreme error." Cowley v. Virtua Health Sys., 456 N.J. Super. 278, 290 (App. Div. 2018).

In an effort to avoid unnecessary delay and resolve disputes between the parties regarding the need to provide an AOM, and to avoid dismissal of meritorious claims brought in good faith, our Court has "developed a prophylactic measure to encourage the timely filing of affidavits[:]" Ferreira conferences. Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 423 (2010) (citing Ferreira, 178 N.J. at 154-55). A Ferreira conference is "an accelerated case management conference [to] be held within ninety days of the service of an answer" in all professional negligence cases to "ensure that discovery related issues, such as compliance with the [AOM] statute, do not become sideshows to the primary purpose of the civil justice system—to shepherd legitimate claims expeditiously to trial[.]" Ibid. (first and third alterations in original) (quoting Ferreira, 178 N.J. at 154). In this way, any

factual question regarding a defendant's status as related to the allegations of negligence in a plaintiff's complaint can be resolved. Murphy v. New Road Constr., 378 N.J. Super. 238, 241-42 (App. Div. 2005).

"By not producing an [AOM], [a] plaintiff may be seen to have placed all his eggs in the ordinary negligence basket without alleging professional negligence as well." Murphy, 378 N.J. Super. at 243. Although a plaintiff aware of the AOM requirements is free to conclude an AOM is not necessary, if that conclusion is incorrect and the requisite time period for filing has passed, the complaint must be dismissed. Paragon, 202 N.J. at 423 (stating "an attorney's inadvertence in failing to timely file an affidavit will generally result in dismissal with prejudice"); Triarsi v. BSC Grp. Servs., LLC, 422 N.J. Super. 104, 121 (App. Div. 2011). Here, a Ferreira conference was conducted and plaintiff was placed on notice of his need to file timely, appropriate AOM's.

We do not view the informed consent component of plaintiff's dental malpractice claim any differently. As our Supreme Court held:

> [T]o sustain a claim based on lack of informed consent, the patient must prove that the doctor [or dentist] withheld pertinent medical information concerning the risks of the procedure or treatment, the alternatives, or the potential results if the procedure or treatment were not undertaken. The information a doctor must disclose depends on what a reasonably prudent patient would

deem significant in determining whether to proceed with the proposed procedure.

A plaintiff seeking to recover under a theory of lack of informed consent also must prove causation, thereby requiring a plaintiff to prove that a reasonably prudent patient in the plaintiff's position would have declined to undergo the treatment if informed of the risks that the defendant failed to disclose. If the plaintiff would have consented to the proposed treatment even with full disclosure, the burden of proving causation is not met. Accordingly,

> [t]o establish a prima facie case for medical negligence premised on a theory of liability for lack of informed consent, a plaintiff must show "(1) the physician failed to comply with the [reasonably-prudent-patient] standard for disclosure; (2) the undisclosed risk occurred and harmed the plaintiff; (3) a reasonable person under the circumstances would not have consented and submitted to the operation or surgical procedure had he or she been so informed; and (4) the operation or surgical procedure was a proximate cause of the plaintiff's injuries."
>
> [Howard v. Univ. of Med. & Dentistry of N.J., 172 N.J. 537, 548-49 (2002) (third and fourth alterations in original) (citations omitted) (quoting Teilhaber v. Greene, 320 N.J. Super. 453, 465 (App. Div. 1999)).]

The AOM requirement applies equally to cases where the claims at issue are based on a theory of lack of informed consent. Risko v. Ciocca, 356 N.J. Super. 406, 412 n.1 (App. Div. 2003). Relatedly, "[a] plaintiff alleging lack

16

of informed consent has the burden of producing expert testimony[.]" Tyndall v. Zaboski, 306 N.J. Super. 423, 426 (1997); see also Chamberlain v. Giampapa, 210 F.3d 154, 161-62 (3d Cir. 2000). Plaintiff argues that it is a "logical impossibility to produce an [AOM] where the misrepresentation occurred between plaintiff and defendants void of witnesses," to substantiate his claim of lack of informed consent. We disagree.

Whether plaintiff's complaint is exempt from the AOM requirement based on the common knowledge doctrine is a legal issue subject to our de novo review. Triarsi, 422 N.J. Super. at 113. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not established to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We review issues of law de novo and accord no deference to the judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Case law dictates that the threshold for any exception to the AOM statute is a high bar. See Ferreira 178 N.J. at 151 (2003) ("[T]wo equitable remedies . . . temper the draconian results of an inflexible application of the statute. A complaint will not be dismissed if the plaintiff can show . . . he has substantially complied with the statute. Moreover, a complaint will be dismissed without

prejudice if there are extraordinary circumstances to explain noncompliance.") (citations omitted).

We find no exceptions or extraordinary circumstances here, and an appropriate AOM was required as to each defendant. We likewise reject plaintiff's claim that the judges failed to determine his constitutional rights were violated under the equal protection clause because of "bait-and-switch" marketing by defendants at his expense. The common knowledge doctrine is inapplicable here because the allegations address deviations from accepted standards of care. As our Court has stated, if "proof of a deviation from the professional standard of care for [the] specific profession. . . . is required, an [AOM] shall be mandatory for that claim, unless either the statutory, or common knowledge exceptions apply." Couri, 173 N.J. at 341 (citation omitted).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION