NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4004-16T4

LINDA COWLEY and
ROBERT COWLEY, w/h,

    Plaintiffs-Appellants,

v.

VIRTUA HEALTH SYSTEM,
VIRTUA VOORHEES HOSPITAL,
ROBERT GRIBBON, R.N.,
and HELENE CURRAN, R.N.,

    Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **September 6, 2018**
>
> **APPELLATE DIVISION**

Argued May 31, 2018 – Decided September 6, 2018

Before Judges Haas, Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3616-16.

Randi S. Greenberg argued the cause for appellants (Sacchetta and Baldino, attorneys; Thomas F. Sacchetta, of counsel and on the briefs).

Mary Kay Wyscoki argued the cause for respondents (Parker McCay, PA, attorneys; Carolyn R. Sleeper and Mary Kay Wysocki, of counsel; Kathryn A. Somerset, on the brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

In this appeal, we are asked to consider whether the Law Division properly dismissed plaintiffs Linda Cowley's and Robert Cowley's medical malpractice complaint based upon their failure to serve an affidavit of merit (AOM), after it rejected plaintiffs' argument that the "common knowledge" exception relieved them of the obligation to serve an AOM as required by the Affidavit of Merit Statute (AMS), N.J.S.A. 2A:53A-26 to -29. In their appeal from the Law Division's April 13, 2017 order dismissing their action against defendants Virtua — West Jersey Health System, Inc. (Virtua) (improperly pled as Virtua Health System and Virtua Voorhees Hospital), Robert Gribbon, R.N. and Helen Curran, R.N., plaintiffs contend that the common knowledge exception applied because the nurses failed to take any action when a tube that was properly inserted into Linda,[1] in accordance with a physician's order, became dislodged. We find that the unique circumstances of this case satisfied the purposes of the AMS by establishing that plaintiffs' claim had sufficient merit under the common knowledge exception to proceed, even without an AOM.

The AMS

> requires that a plaintiff who files a "malpractice or negligence [action against] a licensed person in his profession or

---

[1] We refer to the individual plaintiff by her first name to avoid any confusion caused by plaintiffs' common last name.

occupation" must submit "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices."

[Buck v. Henry, 207 N.J. 377, 388-89 (2011) (alteration in original) (quoting N.J.S.A. 2A:53A-27).]

"The affidavit was identified early on by th[e] Court as a required 'threshold showing' that a malpractice claim is not frivolous." A.T. v. Cohen, 231 N.J. 337, 345 (2017) (citing In re Petition of Hall, 147 N.J. 379, 391 (1997)). In enacting the AMS, it was "the Legislature's intent that the statute facilitate the weeding-out of frivolous lawsuits." Id. at 346 (citations omitted). The "laudatory . . . dual purposes of the statute [are] to identify and eliminate unmeritorious claims against licensed professionals and to permit meritorious claims to proceed efficiently through the litigation process." Meehan v. Antonellis, 226 N.J. 216, 228-29 (2016) (citations omitted). "The submission of an appropriate [AOM] is considered an element of the claim." Id. at 228 (citing Alan J. Cornblatt, PA v. Barow, 153 N.J. 218, 244 (1998)). A plaintiff must serve an AOM or face dismissal of their complaint with prejudice because "[t]he failure to provide the affidavit or its legal equivalent is 'deemed a

3                                                          A-4004-16T4

failure to state a cause of action[.]'" A.T., 231 N.J. at 346 (quoting N.J.S.A. 2A:53A-29).

Our courts "have recognized equitable exceptions to 'temper the draconian results of an inflexible application of the statute[.]'" Ibid. (quoting Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 151 (2003)). One exception is the common knowledge exception. "An [AOM] is not required in a case where the 'common knowledge' doctrine applies and obviates the need for expert testimony to establish a deviation from the professional's standard of care." Bender v. Walgreen Eastern Co., 399 N.J. Super. 584, 590 (App. Div. 2008) (citing Hubbard v. Reed, 168 N.J. 387, 390 (2001)). Case law has applied a common knowledge exception to the AOM requirement in discrete situations where expert testimony is not needed to establish whether the defendants' "care, skill or knowledge . . . fell outside acceptable professional or occupational standards or treatment practices." Hubbard, 168 N.J. at 390 (quoting N.J.S.A. 2A:53A-27). "The basic postulate for application of the doctrine therefore is that the issue of negligence is not related to technical matters peculiarly within the knowledge of medical or dental practitioners." Estate of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 470 (1999) (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961)).

A-4004-16T4

With these guiding principles in mind, we turn to the facts set forth in the motion record. Plaintiffs' October 6, 2016 filing of their "medical malpractice complaint" arose from the treatment Linda received after being admitted to Virtua on October 17, 2014, where she underwent diagnostic testing that revealed "multiple gall stones[,]" "a small bowel obstruction and mild dilation of the bile ducts." She was diagnosed with "acute cholecystitis[,]" a doctor performed a procedure to remove her gallstones, and a physician's order was written requiring that a nasogastric (NG) tube be inserted.[2]

Pursuant to the physician's order, a nurse inserted the NG tube. The order did not address reinsertion of the tube if it fell out or was otherwise removed. According to hospital records, Linda pulled out the tube less than two days later and "refused replacement[.]" Plaintiffs allege the nurses did not reinsert the tube nor did they contact anyone for instructions, including the

---

[2]  Cholecystitis refers to "[i]nflammation of the gallbladder." Stedman's Medical Dictionary 365 (28th ed. 2006). An NG tube is "[a] tube that is inserted through the nose, down the throat and esophagus, and into the stomach. It can be used to give drugs, liquids, and liquid food, or used to remove substances from the stomach. Giving food through a nasogastric tube is a type of enteral nutrition." NCI Dictionary of Cancer Terms, National Cancer Institute, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/nasogastric-tube (last visited Aug. 17, 2018).

physician who ordered the NG tube. Linda subsequently underwent surgery for a bowel obstruction and by the time she was discharged from the hospital, she was diagnosed with twelve different medical conditions. Afterward, Linda suffered various post-operative complications that she claims resulted from defendants' "fail[ure] to comply with the order . . . ."

Plaintiffs' complaint specifically alleged that "defendants failed to comply with the order [for the NG tube] and while the NG tube was out, [Linda] aspirated and significantly deteriorated." Identifying defendants' negligence, the complaint alleged that it included "failure to properly treat . . . diagnose . . . [and] monitor [Linda] . . . ." It also alleged "[d]efendants failed in their duty to plaintiff including failing to properly care for [her,] follow policies and procedures and . . . to notify proper medical personnel and obtain proper consent."

Defendants filed an answer to the complaint on November 22, 2016, and on March 23, 2017, they filed a motion to dismiss the complaint based upon plaintiffs' failure to serve an AOM. Plaintiffs submitted their attorney's certification in opposition to the motion that explained, "[p]laintiffs have not provided an [AOM] as [they] believe that this matter presents a common

knowledge case" that relieved them of the obligation to serve an AOM.

On April 13, 2017, the motion judge considered the parties' oral arguments and entered her order granting the motion to dismiss with prejudice. In her statement of reasons placed on the record on that date, the judge addressed plaintiffs' contention that the common knowledge exception applied and their reliance upon the Supreme Court's opinions in Hubbard and Estate of Chin to support their argument that an AOM was not required in this case. The judge acknowledged that under the exception, an AOM is not required where a "jur[or]'s common knowledge as a lay person is sufficient to enable them to use ordinary understanding and experience to determine a defendant's negligence, without the benefit of the specialized knowledge of an expert." The judge noted, however that Hubbard suggested it was still in a plaintiff's interest to serve an AOM to "prevent the risk of a dismissal if the plaintiff is unsuccessful in persuading the court that an expert is not necessary."

The motion judge also observed that plaintiffs' claim in this case was similar to the claim made in Estate of Chin that "involved

the improper connection of a tube to a hysteroscope[3] used during a procedure which permitted nitrogen to enter the plaintiff's uterus." According to the judge, in Estate of Chin, the common knowledge exception applied because "the jury was called [upon] to determine who did what with the tube line rather than with regard to any professional standard of care" since the only issue was "who improperly connected the tube . . . ."

Comparing the facts in Estate of Chin to plaintiffs' claim here, the judge found that there was "no dispute that the [NG] tube was . . . placed pursuant to the [physician's] order [but] plaintiff claims when the tube was removed that the order was continuing, and there was a continuing obligation to insert the tube." Turning to defendant's contentions based on the medical records, the judge found that plaintiff did "not dispute the accuracy of the[] records" that stated that during the night following the placement of the tube, plaintiff pulled it out and refused to have it replaced. However, she did not consider "it to be material to the analysis how the tube was removed or whether [Linda] actually refused replacement."

---

[3]    A hysteroscope is "[a]n endoscope used in direct visual examination of the canal of the uterine cavity." Stedman's Medical Dictionary 941 (28th ed. 2006).

The judge concluded that <u>Estate of Chin</u> did not apply because plaintiffs did not dispute the fact that the tube was initially inserted in accordance with a physician's order, a fact which the judge found to be "critical in making this determination." According to the judge, the factual circumstances here changed "this matter from a case where a jury with ordinary knowledge and experience could make a determination . . . to a standard of care case that requires expert testimony." She concluded, "a jury cannot make a determination in this case without knowing what . . . a nurse [should] do" when an [NG] tube is inserted pursuant to an order but subsequently comes out. Under these circumstances, the judge held that the common knowledge exception did not apply and an AOM was required because a jury would be called upon not to determine whether the tube was inserted, but what is the standard of care when the NG "tube comes out."

On appeal from the judge's order dismissing their complaint, plaintiffs argue that contrary to the motion judge's conclusion, the "failure to reinsert . . . Linda['s] . . . [NG] tube falls within the 'common knowledge' exception to N.J.S.A. 2A:53A-27[.]" We agree.

Whether plaintiff's complaint is exempt from the AOM requirement based on the common knowledge doctrine is a legal issue subject to our de novo review. <u>See</u> <u>Triarsi v. BSC Grp.</u>

Servs., LLC, 422 N.J. Super. 104, 113 (App. Div. 2011). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

Of significance to our review is the purpose behind the AMS being "to weed out frivolous complaints, not to create hidden pitfalls for meritorious ones." Buck, 207 N.J. at 383. In order to establish a claim's merit, the AMS requires a plaintiff to provide an expert's affidavit stating the action has merit. N.J.S.A. 2A:53A-27. Generally, "the [AMS] 'is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint,' but with whether there is some objective threshold merit to the allegations." Hubbard, 168 N.J. at 394 (quoting Hubbard v. Reed, 331 N.J. Super. 283, 292-93 (App. Div. 2000), rev'd on other grounds, 168 N.J. 387 (2001)). The underlying rationale of "the statute is 'to require plaintiffs . . . to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of the litigation.'" Paragon Contrs., Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 421 (2010) (alteration in original) (quoting In re Petition of Hall, 147 N.J. at 391).

The AMS is consistent with the general requirement that expert testimony is required to establish the standard of care, which is an essential element of a plaintiff's professional negligence claim. Expert testimony about an alleged deviation from a reasonable standard of care is required whenever a licensed person exercised professional responsibilities and judgment before acting or failing to act. Aster ex rel. Garofalo v. Shoreline Behavioral Health, 346 N.J. Super. 536, 542 n.4 (App. Div. 2002). "In most such cases, expert testimony will be required to establish both a standard of care and breach of that standard by the defendant, and a plaintiff who fails to present testimony could be subject to involuntary dismissal pursuant to Rule 4:37-2(b)." Hubbard, 168 N.J. at 397.

A plaintiff aware of the AMS's requirements is free to conclude an AOM is not necessary, but if that conclusion is incorrect and the requisite time period for filing has passed, the complaint must be dismissed. See Paragon, 202 N.J. at 423. "[T]he wise course of action in all malpractice cases [is] for plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial." Hubbard, 168 N.J. at 397. Any "uncertainty in relying on common knowledge in professional malpractice cases" should be addressed by "[a] timely filed

affidavit [that] would prevent the risk of a later dismissal." Ibid. (citations omitted).[4]

In the complex field of medicine and patient treatment, expert testimony is typically required.  See Nowacki v. Cmty. Med. Ctr., 279 N.J. Super. 276, 291 (App. Div. 1995).  That requirement, however, is not absolute.  Our courts have recognized that not all lawsuits against licensed professionals require an AOM, including where the common knowledge exception applies.  See Bender, 399 N.J. Super. at 590.  Those situations are generally limited to where the jurors' knowledge as laypersons suffices to enable them, using their ordinary understanding and experience, to assess a defendant's alleged "negligence without the benefit of specialized knowledge of experts."  Hubbard, 168 N.J. at 394 (quoting Estate of Chin, 160 N.J. at 469).  "[E]ven in a medical malpractice case, there are some duties the breach of which would be clear to a juror of average experience and intelligence, so that expert

---

[4]  Although not raised as an issue before the motion judge or us, we observe that the required Ferreira conference, where disputes about AOMs should be resolved, was never scheduled by the trial court or requested by either party.  See A.T., 231 N.J. at 346 ("We mandated the conference and imposed requirements on both courts and defendants to discover and address issues as to the sufficiency of a plaintiff's AOM."  (citing Ferreira, 178 N.J. at 155)).

testimony on the standard of care is not required." Nowacki, 279 N.J. Super. at 291 (citations omitted).

However, the common knowledge exception is construed narrowly in order to avoid non-compliance with the legislative objectives of the AOM statute. Hubbard, 168 N.J. at 397. For the exception to apply, "the threshold of merit should be readily apparent from a reading of the plaintiff's complaint." Id. at 395.

Determining whether a matter fits within the common knowledge exception, demands scrutiny of the legal claims alleged. Couri v. Gardner, 173 N.J. 328, 340-41 (2002) ("It is not the label placed on the action that is pivotal but the nature of the legal inquiry."). "If jurors, using ordinary understanding and experience and without the assistance of an expert, can determine whether a defendant has been negligent, the threshold of merit should be readily apparent from a reading of the plaintiff's complaint." Hubbard, 168 N.J. at 395.

Common knowledge cases involve obvious or extreme error. See Bender, 399 N.J. Super. at 590. Our courts have held that the exception applies in cases involving licensed medical facilities where "jurors are competent to assess simple negligence occurring in a hospital without expert testimony to establish the standard of ordinary care, as in any other negligence case[.]" Nowacki, 279 N.J. Super. at 292. As the Court stated in Estate of Chin,

13

the doctrine "is appropriately invoked where the 'carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience.'"  160 N.J. at 469 (citations omitted).

For example, the common knowledge exception was applied in Estate of Chin, because "[n]o party contested the fact that the misconnection [of a hysteroscope] was the result of negligence on the part of at least one defendant."  Id. at 471.  In Hubbard, it was applied to a claim that a dentist pulled the wrong tooth. Hubbard, 168 N.J. at 396.  The exception was also applicable to: (1) the claim against the doctor in Palanque v. Lambert-Woolley, who misdiagnosed the plaintiff and subjected her to unnecessary surgical procedures after admittedly "misreading [her] laboratory results," 168 N.J. 398, 407 (2001); (2) a claim filed against the pharmacist in Bender, 399 N.J. Super. at 590-91, who filled a prescription with the wrong medication; and (3) the podiatrist in Jones v. Stess, 111 N.J. Super. 283, 289-90 (App. Div. 1970), who dropped an instrument on the patient's leg causing an amputation. By contrast, in Risko v. Ciocca, 356 N.J. Super. 406, 408-11 (App. Div. 2003), we rejected the exception's application because complexities involved in plaintiff's operation and medical condition warranted expert testimony to show whether the defendant doctors breached a duty of care.

A-4004-16T4

Unlike the other cases we have considered, plaintiffs' claim in this case presents the circumstance of an alleged obvious act of omission, rather than an affirmative action that clearly bespoke negligence as in the cases we cited. Other courts have found the common knowledge exception to apply in similar circumstances. For example, in Natale v. Camden County Correctional Facility, 318 F.3d 575, 580 (3d Cir. 2003), the Third Circuit applied the exception where the defendant health service provider failed to ask the patient's treating physician who ordered insulin for a diabetic patient how often the medicine needed to be administered. The Third Circuit concluded, "[w]hile laypersons are unlikely to know how often insulin-dependent diabetics need insulin, common sense -- the judgment imparted by human experience -- would tell a layperson that medical personnel charged with caring for an insulin-dependent diabetic should determine how often the diabetic needs insulin." Ibid.

Similarly, in Bryan v. Shah, 351 F. Supp. 2d 295, 300, 302 n.11 (D.N.J. 2005), where health providers "twice failed to obtain blood tests to monitor Lithium levels, which tests were twice ordered by the physician[,]" a U.S. District Court judge noted:

> [T]his case does not appear to turn on whether
> defendants knew that a patient taking lithium
> is at risk of suffering from lithium toxicity
> if regular lab tests are not performed; this
> case does appear to revolve around whether

> medical orders were adhered to and whether
> Defendants followed up with the Plaintiff
> after the orders were given.

See Jackson v. Fauver, 334 F. Supp. 2d 697, 743 (D.N.J. 2004) ("A reasonable jury would not need the assistance of an expert to conclude that [the medical provider's] personnel were negligent when they allegedly failed both to provide these plaintiffs with medical care prescribed for them by their treating specialists and <u>to follow the medical instructions of these specialists.</u>" (emphasis added)).

We conclude the logic applied in the cited federal cases dealing with a failure to take action to continually fulfill a doctor's orders applies equally to the allegations in this case. Defendants here are alleged to have not taken any action, not even making a telephone call to the attending physician to alert him of the NG tube's dislodgment and to seek further instructions given the circumstances. Applying the purpose of the AMS to these facts, we conclude that a layperson could determine, without expert assistance, that plaintiffs' claim based upon the nurses' failure to take any action when the NG tube became dislodged has merit in light of the fact that a physician ordered that it remain inserted. At this stage, common sense dictates that some action should have been taken when the nurses were confronted with the sudden

termination of Linda's medical treatment that was required by the physician charged with her care.

Concluding the complaint has merit does not, however, indicate that plaintiffs' claim automatically survives challenges that might later arise in the form of summary judgment motions or during trial. It only means that, at this stage, there is no need to "weed out" plaintiffs' claim. The preservation of plaintiffs' claim is of course limited to the allegations relating to the nurses' failure to take further action after the NG tube became dislodged. It does not revive any other basis for plaintiffs' claim.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION