SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Linda Cowley v. Virtua Health System (A-47-18) (081891)

**Argued November 19, 2019 -- Decided May 4, 2020**

**FERNANDEZ-VINA, J., writing for the Court.**

The Court considers whether, in this case, the "common knowledge" exception relieves plaintiffs of the obligation to serve an affidavit of merit as required by the Affidavit of Merit Statute, N.J.S.A. 2A:53A-26 to -29.

Plaintiff Linda Cowley was admitted to Virtua Voorhees Hospital (Virtua). A physician entered an order directing nursing staff to insert a Nasogastric Tube (NG Tube), a tube that passes through the nose into the stomach to deliver medicine, liquids, and liquid food to a patient. According to Virtua's records, Cowley removed her NG Tube overnight and refused replacement. Cowley and her husband sued Virtua and others, alleging defendants did not comply with the written order to insert an NG Tube and that her condition deteriorated while the NG Tube was dislodged.

Defendants filed a demand for an affidavit of merit. Plaintiffs argued their duty to provide an affidavit of merit was relieved because this matter was one of "common knowledge." The trial court dismissed plaintiffs' complaint with prejudice, determining that the common knowledge exception did not apply and an affidavit of merit was required. The Appellate Division reversed. 456 N.J. Super. 278, 292 (App. Div. 2018). The appellate court found the common knowledge exception applicable to this case, reasoning that "common sense dictates that some action should have been taken when the nurses were confronted with the sudden termination of Linda's medical treatment that was required by the physician charged with her care." Id. at 291-92. The Court granted certification. 236 N.J. 363 (2019).

**HELD:** Here, where a patient removed the tube herself and refused replacement, important questions about the procedures, protocols, and duties of a licensed nurse in these circumstances must be explained in order to establish a deviation in the standard of care. In addition, important considerations about patient autonomy complicate the standard-of-care analysis. A jury could not reach a determination as to a nurse's responsibility under these circumstances without the benefit of expert opinion as to the appropriate balance between patient autonomy and prescribed treatment. An affidavit of merit was therefore required.

1

1.  The Affidavit of Merit Statute requires that, in malpractice actions, plaintiffs "provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices."  N.J.S.A. 2A:53A-27.  The statute's primary purpose is to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily can be identified at an early stage of litigation.  Failure to provide an affidavit or its legal equivalent is "deemed a failure to state a cause of action," N.J.S.A. 2A:53A-29, requiring dismissal with prejudice unless an equitable exception applies.  (pp. 13-15)

2.  One such equitable exception is the common knowledge exception, which applies only in exceptionally rare cases in which an expert is not needed to demonstrate that a defendant professional breached some duty of care because the carelessness of the defendant is readily apparent to anyone of average intelligence.  The Court stresses that the existence of the exception alone does not mean that plaintiffs in malpractice cases should not provide affidavits, even when they do not intend to rely on expert testimony at trial.  And plaintiffs who do not file affidavits of merit and are unsuccessful in persuading a court that an expert is not necessary run the risk of having their cases dismissed for failure to state a cause of action under N.J.S.A. 2A:53A-29.  The exception is properly invoked only when jurors are competent to assess simple negligence occurring without expert testimony to establish the standard of ordinary care.  (pp. 15-20)

3.  A competent adult has the right to decline to have any medical treatment initiated or continued.  The right to make decisions concerning one's body is protected by statute and by the federal constitutional right of privacy.  (pp. 20-21)

4.  Here, plaintiffs did not satisfy the common knowledge exception and therefore were not relieved of their obligation to provide an affidavit of merit.  This is not simply a case of failure to follow a physician's order.  The issue for the jury is not whether a nurse may ignore a physician's order, but rather what steps are required of a nurse when a patient refuses reinsertion of an NG Tube after its removal.  Included in that assessment will be considerations about a patient's exercise of a right to refuse treatment.  And resolution of that issue -- determination of what action, if any, should be taken under circumstances like those presented here -- ultimately requires expert opinion as to the appropriate standard of care, as well as the submission of an affidavit of merit.  Here, plaintiffs neither submitted an affidavit of merit nor satisfied an exception to that requirement, and N.J.S.A. 2A:53A-29 requires dismissal with prejudice for noncompliance.  (pp. 21-24)

**REVERSED.  The complaint is DISMISSED WITH PREJUDICE.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.**

SUPREME COURT OF NEW JERSEY

A-47 September Term 2018

081891

Linda Cowley and
Robert Cowley, w/h,

Plaintiffs-Respondents,

v.

Virtua Health System,
Virtua Voorhees Hospital,
Robert Gibbons, R.N.,
and Helene Curran, R.N.,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
456 N.J. Super. 278 (App. Div. 2018).

| Argued | Decided |
| --- | --- |
| November 19, 2019 | May 4, 2020 |

Mary Kay Wysocki argued the cause for appellants
(Parker McCay, attorneys; Mary Kay Wysocki and
Carolyn R. Sleeper, of counsel, and Kathryn A.
Somerset, on the briefs).

Randi S. Greenberg argued the cause for respondents
(Sacchetta & Baldino, attorneys; Thomas F. Sacchetta,
on the brief).

1

Eric S. Poe argued the cause for amicus curiae New Jersey Physicians United Reciprocal Exchange (Eric S. Poe, of counsel and on the brief, and Abbey True Harris, on the brief).

Anthony Argiropoulos argued the cause for amicus curiae New Jersey Doctor-Patient Alliance (Epstein Becker & Green, attorneys; Anthony Argiropoulos and William Gibson, of counsel and on the brief).

Abbott S. Brown argued the cause for amicus curiae New Jersey Association for Justice (Lomurro, Munson, Comer, Brown & Schottland, attorneys; Abbott S. Brown, Jonathan H. Lomurro, and Christina Vassiliou Harvey, of counsel and on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

We must now decide whether the "common knowledge" exception relieves plaintiffs of the obligation to serve an affidavit of merit as required by the Affidavit of Merit Statute, N.J.S.A. 2A:53A-26 to -29. In support of plaintiffs' medical malpractice claim, they allege defendants failed to take action after a food- and medicine-administering tube, properly inserted in accordance with a physician's order, was dislodged.

The Affidavit of Merit Statute requires plaintiffs alleging malpractice against a licensed professional to include an affidavit from a medical expert in their filing. The affidavit must provide that there exists a reasonable probability the standard of care exercised in the alleged malpractice fell

2

outside the acceptable professional or occupational standards. This Court has fashioned an exception to that requirement for cases in which the alleged conduct or failure to act, if accepted as true, would be readily recognizable, by a person of average intelligence, as a failure to exercise the appropriate standard of care. The issue here, is whether the failure to act when a patient dislodges her tube and refuses its reinsertion would fall within the jury's common knowledge as a departure from the acceptable standards.

The trial court reasoned that a jury could not use common knowledge to determine what standard of care a nurse should use when a tube is intentionally dislodged by the patient. The Appellate Division reversed, concluding such a determination was not necessary. The Appellate Division found a jury could use common knowledge to determine a nurse should take some action when a tube is dislodged and that no affidavit of merit was needed in this case.

We disagree with the Appellate Division's findings. The common knowledge exception to the Affidavit of Merit Statute applies only when expert testimony is not required to prove a professional defendant's negligence. Thus, in the limited cases where a person of reasonable intelligence can use common knowledge to determine that there was a deviation from a standard of care, an expert is no more qualified to attest to the

3

merit of a plaintiff's malpractice practice claim than a non-expert.  This is not one of those cases.  Here, where a patient removed the tube herself and refused replacement, important questions about the procedures, protocols, and duties of a licensed nurse in these circumstances must be explained in order to establish a deviation in the standard of care.  In addition, important considerations about patient autonomy complicate the standard-of-care analysis.  A jury could not reach a determination as to a nurse's responsibility under these circumstances without the benefit of expert opinion as to the appropriate balance between patient autonomy and prescribed treatment.  An affidavit of merit was therefore required, and we accordingly reverse the judgment of the Appellate Division.

## I.

## A.

We begin by summarizing the pertinent facts and procedural history.  Plaintiff Linda Cowley was admitted to Virtua Voorhees Hospital (Virtua) on October 17, 2014, with abdominal discomfort.  After undergoing testing, Cowley was diagnosed with multiple gallstones and a small bowel obstruction, among other complications, leading to a corrective procedure.  Subsequently, one of Cowley's physicians entered an order directing nursing staff to insert a Nasogastric Tube (NG Tube), a tube that passes through the nose into the

4

stomach to deliver medicine, liquids, and liquid food to a patient. The tube was inserted on October 18, 2014.

According to Virtua's records, Cowley removed her NG Tube and IV lines overnight and refused replacement. Cowley alleges the nurses on staff, including defendants Robert Gribbon, R.N., and Helene Curran, R.N., did not reinsert the tube. Cowley subsequently underwent a series of procedures and, by the time she was discharged from the hospital at her request, she was diagnosed with several medical conditions. Cowley claims the post-operative complications she suffered resulted from the defendants' failure to reinsert the NG Tube.

## B.

Linda Cowley and her husband Robert, sued Virtua, Virtua Health System, Nurse Gribbon, and Nurse Curran in Superior Court, Camden County, alleging defendants did not comply with the written order to insert an NG Tube. The Cowleys further alleged defendants did not properly treat Linda, leading her to aspirate and her condition to deteriorate while the NG Tube was dislodged.

Defendants filed an answer, which included a demand for an affidavit of merit pursuant to the Affidavit of Merit Statute. Plaintiffs subsequently failed to file the affidavit by the requisite deadline, and defendants filed a motion to

dismiss based upon plaintiffs' failure to serve an affidavit. Plaintiffs then submitted their attorney's certification in opposition to the motion to dismiss, arguing their duty to provide an affidavit of merit was relieved because this matter was one of "common knowledge."

Following oral argument, the trial court granted defendants' motion to dismiss with prejudice. The court ruled that the common knowledge exception did not apply and an affidavit of merit was required. The trial court held that a jury would not be called upon to determine whether the NG Tube was initially inserted, but to determine the standard of care that governed the nurses' conduct after the NG Tube is dislodged. The trial court stated that a jury cannot determine the standard of care in such a case without knowing what a nurse should do when an NG Tube inserted pursuant to an order is subsequently removed by the patient and the patient refuses reinsertion. According to the judge, the facts of this case changed the matter from one where a jury with ordinary knowledge and experience could make a determination, to one where a jury requires expert testimony to determine the standard of care. The trial court rejected plaintiffs' argument that once the NG Tube was removed, the initial order to insert the tube was still in place, maintaining a continuing obligation to reinsert the tube.

The Appellate Division reversed. Cowley v. Virtua Health Sys., 456 N.J. Super. 278, 292 (App. Div. 2018). The Appellate Division first noted that the purpose behind the Affidavit of Merit Statute is "to weed out frivolous complaints, not to create hidden pitfalls for meritorious ones." Id. at 288 (quoting Buck v. Henry, 207 N.J. 377, 383 (2011)). The court explained that the Affidavit of Merit Statute requires a plaintiff to provide an expert's affidavit stating the action has merit but is generally not concerned with the plaintiff's ability to prove the allegation in the complaint. Ibid. As such, the Appellate Division held the Legislature intended the statute to readily identify meritless lawsuits at an early stage of litigation. Ibid.

The Appellate Division observed, however, that the affidavit of merit requirement "is not absolute." Id. at 289. The court explained that in situations where the jurors' knowledge as laypersons suffices to enable them to assess a defendant's negligence without the benefit of expert testimony, an affidavit of merit against a licensed professional is not required. Ibid. The court noted that the common knowledge exception is applied narrowly to cases that "involve obvious or extreme error," id. at 289-90, and explained that plaintiffs' claim in this case presents the circumstance "of an alleged obvious act of omission, rather than an affirmative action that clearly bespoke negligence," id. at 291.

Noting that federal courts have applied the common knowledge exception in cases turning on alleged omissions, the Appellate Division found the exception applicable to this case. Id. at 291-92. Ultimately, the Appellate Division concluded a layperson could determine that plaintiffs' claim based on the nurses' lack of action when the NG Tube was dislodged -- including their failure to call the physician for instructions -- has merit in light of the fact that the physician had ordered it remain inserted. Id. at 292. The court reasoned "common sense dictates that some action should have been taken when the nurses were confronted with the sudden termination of Linda's medical treatment that was required by the physician charged with her care." Ibid.

However, the Appellate Division stressed that its conclusion did not mean that plaintiffs' claim would automatically survive a motion for summary judgment or challenge during trial. Ibid. The court explained that the holding established only that at the early stage of the case, "there is no need to 'weed out' plaintiffs' claim." Ibid.

We granted defendants' petition for certification. 236 N.J. 363 (2019). We also granted the motions of the New Jersey Doctor-Patient Alliance (NJDPA), the New Jersey Physicians United Reciprocal Exchange (PURE), and the New Jersey Association for Justice (NJAJ) to participate as amici curiae.

8

## II.

### A.

Defendants Virtua, Virtua Health System, Nurse Gribbon, and Nurse Curran argue this is a complex medical malpractice case. Defendants contend an NG Tube was successfully inserted pursuant to a physician's order, after which Linda Cowley chose to remove the tube and refuse replacement. Defendants frame the issue as whether the nurses took adequate action in response to a patient's refusal of reinsertion of a dislodged NG Tube, which they argue is not a matter of "common knowledge" within the purview of a lay juror's average intelligence and understanding.

Defendants also assert the trial court correctly rejected plaintiffs' oversimplification of the issues, because a patient's refusal of medical treatment raises serious questions about a provider's responsibility for and manner of care. They argue the Appellate Division oversimplified the severity of the medical malpractice matter, which requires expert opinion on the standard of care initiated by an affidavit of merit. Defendants submit that contrary to the Appellate Division's holding, the nurses' conduct at issue was not merely a "negligent omission" because the NG Tube was not reinserted after Linda Cowley refused that procedure.

9

Defendants further assert the misapplication of the law by the Appellate Division resulted in a disregard for plaintiffs' statutory obligation to provide an affidavit of merit and, moreover, ignored important public policy requiring respect for patient autonomy.

## B.

Amicus curiae NJDPA, aligned with defendants' position, argues that the Appellate Division's decision should be reversed, and plaintiffs' complaint should be dismissed for failure to comply with the Affidavit of Merit Statute. NJDPA submits the Appellate Division misapplied the very narrow common knowledge exception to this case. NJDPA contends that unless the Appellate Division's decision is reversed, it will negatively alter the medical malpractice landscape. NJDPA asserts that the standard of care of a nurse treating a patient who removes an NG Tube, and refuses reinsertion, is not within the average understanding of a juror and thus warranted an affidavit of merit.

## C.

Amicus curiae PURE, also aligned with defendants' position, contends that the Appellate Division's decision should be reversed. Addressing the issue from an insurance provider's perspective, PURE argues that expanding the common knowledge exception creates uncertainty in the medical malpractice insurance industry that will negatively impact insurance

companies, physicians, and patients alike. PURE argues that if medical malpractice claims are scrutinized by judges rather than by medical professionals via an affidavit of merit, the predictability of insurance claims will decrease, which will increase expenses and rates.

D.

Plaintiffs Linda and Robert Cowley counter that this case does not implicate public policy regarding a patient's autonomy. Rather, plaintiffs argue the issue is whether defendants' failure to act upon discovery of the dislodged NG Tube falls within the common knowledge exception to the affidavit of merit requirement. Plaintiffs argue defendants overlook the significance of the fact that the order for the NG Tube remained in effect after it was dislodged, and a jury does not need expert testimony to comprehend the significance of a physician's order. Further, plaintiffs argue the fact that defendants did nothing after learning the order was not followed is within the scope of the lay juror's common knowledge; the reasons for noncompliance with the order are irrelevant.

E.

In support of plaintiffs' position, NJAJ asserts the Appellate Division properly found the common knowledge exception applied because the complaint alleged a nurse violated a doctor's order to maintain placement of an

11

NG Tube. NJAJ also submits plaintiffs' claim should not be subject to dismissal with prejudice on affidavit of merit grounds without the opportunity to resolve the issue at a <u>Ferreira</u> conference.[1] In sum, NJAJ asserts this Court should affirm the Appellate Division, establish that a nurse's failure to follow a doctor's order is at least prima facie evidence of negligence sufficient to allow the case to proceed, and ultimately instruct trial courts of the obligation to resolve such issues at a <u>Ferreira</u> conference.[2]

III.

A.

Our Court reviews de novo the statutory interpretation issue of whether a cause of action is exempt from the affidavit of merit requirement. <u>See</u> <u>Triarsi v. BSC Group Servs., LLC</u>, 422 N.J. Super. 104, 113 (App. Div. 2011). We therefore owe no deference to the trial court or Appellate Division if they have incorrectly interpreted the law. <u>Zabilowicz v. Kelsey</u>, 200 N.J. 507, 512-13 (2009) (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

---

[1] <u>Ferreira v. Rancocas Orthopedic Assocs.</u>, 178 N.J. 144 (2003).

[2] This argument fails to recognize that the trial court determined an affidavit of merit was required and none was provided in response. There was no issue of sufficiency to be addressed at a <u>Ferreira</u> conference.

12

The overriding goal when engaging in statutory construction is "'to determine the Legislature's intent.' The first step in determining the Legislature's intent is to look at the plain language of the statute." Hubbard v. Reed, 168 N.J. 387, 392 (2001) (quoting Dep't of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 627 (1995)). Because our main purpose in reviewing statutes is to give life to the plain language, we will refer to extrinsic sources to determine legislative intent "[o]nly if the words of the enactment are shrouded in ambiguity." Zabilowicz, 200 N.J. at 513. "[W]hen a 'literal interpretation of individual statutory terms or provisions' would lead to results 'inconsistent with the overall purpose of the statute,' that interpretation should be rejected." Hubbard, 168 N.J. at 392-93 (quoting Cornblatt v. Barow, 153 N.J. 218, 242 (1998)).

## B.

The New Jersey Affidavit of Merit Statute, set forth at N.J.S.A. 2A:53A-26 to -29, requires in part that,

> [i]n any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the

13

> complaint, fell outside acceptable professional or occupational standards or treatment practices. . . .
>
> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in [N.J.S.A. 2A:53A-41].
>
> [N.J.S.A. 2A:53A-27.]

The Affidavit of Merit Statute's primary purpose "is 'to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily [can] be identified at an early stage of litigation.'" Cornblatt, 153 N.J. at 242 (quoting In re Petition of Hall, 147 N.J. 379, 391 (1997)). As such, in enacting the statute, the Legislature was not concerned with a plaintiff's ability to prove the allegation contained in his or her complaint, but rather "with whether there is some objective threshold merit to the allegations." Hubbard, 168 N.J. at 394 (quoting Hubbard v. Reed, 331 N.J. Super. 283, 292-93 (App. Div. 2000)).

To demonstrate the threshold of merit, the Affidavit of Merit Statute "requires plaintiffs to provide an expert opinion, given under oath, that a duty of care existed and that the defendant breached that duty." Ibid. The Affidavit of Merit Statute applies only to the duty of care and breach of duty of care elements of a negligence claim, not to causation or damages; an affidavit need only prove that "the care, skill or knowledge . . . fell outside acceptable

14

professional or occupational standards or treatment practices." Id. at 390 (quoting N.J.S.A. 2A:53A-27).

The failure to provide an affidavit or its legal equivalent is "deemed a failure to state a cause of action," N.J.S.A. 2A:53A-29, and this Court has "construed the statute to require dismissal with prejudice for noncompliance," A.T. v. Cohen, 231 N.J. 337, 346 (2017) (citing Cornblatt, 153 N.J. at 247). However, this Court also recognizes equitable exceptions to the statutory requirements "to 'temper the draconian results of an inflexible application of the statute,'" and has crafted "mechanisms to draw attention to and facilitate satisfaction of this statutory obligation and its goals." Ibid. (quoting Ferreira, 178 N.J. at 151). One such mechanism is the common knowledge exception.

C.

On its face, the Affidavit of Merit Statute applies to any action involving professional malpractice, and no exception is made for common knowledge cases. Id. at 393. In the exceptionally rare cases in which the common knowledge exception applies, however, an expert is not needed to demonstrate that a defendant professional breached some duty of care "where the carelessness of the defendant is readily apparent to anyone of average intelligence." Rosenberg v. Cahill, 99 N.J. 318, 325 (1985).

In those exceptional circumstances, the "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." Hubbard, 168 N.J. at 394 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)). Thus, a plaintiff in a malpractice case is exempt, under the common knowledge exception, from compliance with the affidavit of merit requirement only where it is apparent that "the issue of negligence is not related to technical matters peculiarly within the knowledge of [the licensed] practitioner[]." Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961).

The primary purpose of the statute is to "require plaintiffs . . . to make a threshold showing that their claim is meritorious." Hubbard, 168 N.J. at 394 (internal quotation marks omitted) (quoting Cornblatt, 153 N.J. at 242). However, " [i]f jurors, using ordinary understanding and experience and without the assistance of an expert, can determine whether a defendant has been negligent, the threshold of merit should be readily apparent from a reading of plaintiff's complaint." Id. at 395.

Thus, in Hubbard, where a doctor pulled the wrong tooth from his patient's mouth, the Court recognized that it "has long been settled that pulling the wrong tooth is negligent as a matter of common knowledge. Id. at 396

16

(citing Steinke v. Bell, 32 N.J. Super. 67, 70 (App. Div. 1954)). The Court concluded that "the average layperson could apply his or her general understanding and knowledge to find that the defendant . . . breached a duty of care." Ibid.

In Palanque v. Lambert-Woolley, a plaintiff sought medical treatment for heavy menstrual bleeding, and the defendant ordered two pregnancy tests. 168 N.J. 398, 400 (2001). The defendant misread the first test, concluded plaintiff was pregnant, and then ordered a second test, which defendant misread again as confirming that plaintiff was pregnant. Ibid. An investigation determined that defendant had read the test results as being 1145 and 1421 MIU/ML, which indicated an ectopic pregnancy. Id. at 401. Defendant diagnosed plaintiff as having an ectopic pregnancy. Id. 400-01. The numbers 1145 and 1421, however, were actually the specimen's identification numbers on the laboratory report, not the MIU/ML measurement. Ibid. The Court concluded that "[b]ecause defendant's careless acts are quite obvious, a plaintiff need not present testimony at trial to establish the standard of care." Id. at 406.

Similarly, in Estate of Chin v. Saint Barnabas Medical Center, a patient died from an air embolism during a diagnostic hysteroscopy, during which someone accidentally connected a gas line rather than a fluid line to the

17

patient's uterus.  160 N.J. 454, 460 (1999).  The Court concluded that the common knowledge exception applied, noting that "if there is a hook-up which is incorrect, that . . . is a matter of common knowledge and a jury can draw the inference that there was professional negligence."  Id. at 470 (ellipsis in original).  That is because the case "hinged primarily on the jury's determinations regarding who did what with the exhaust line, rather than with regard to professional standards of care."  Id. at 471.

The common knowledge exception is construed narrowly "to avoid non-compliance with the statute."  Hubbard, 168 N.J. at 397.  The existence of the exception alone does not mean that plaintiffs in malpractice cases should not provide affidavits, even when they do not intend to rely on expert testimony at trial.  This Court has established that "[i]n most . . . cases, expert testimony will be required to establish both a standard of care and breach of that standard by the defendant, and a plaintiff who fails to present testimony could be subject to involuntary dismissal pursuant to Rule 4:37-2(b)."  Ibid.  And plaintiffs who do not file affidavits of merit and are unsuccessful in persuading a court that an expert is not necessary run the risk of having their cases dismissed for failure to state a cause of action under N.J.S.A. 2A:53A-29.  Ibid.

18

Because of the innate complexities of medical malpractice actions, such issues do not usually fall within the common knowledge of an average juror. Rosenberg, 99 N.J. at 325. This Court has determined that "[t]he test of need of expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982).

At its core, the common knowledge exception allows jurors to "supply the applicable standard of care . . . to obviate the necessity for expert testimony relative thereto." Sanzari, 34 N.J. at 141. However, "a jury of laymen cannot be allowed to speculate as to whether the procedure followed by a [defendant professional] conformed to the required professional standards." Schueler v. Strelinger, 43 N.J. 330, 345 (1964). Rather, the common knowledge exception to the Affidavit of Merit Statute applies only to cases where expert testimony is not needed to establish the applicable standard of care. Chin, 160 N.J. at 469. More specifically, the exception is properly invoked only when "jurors are competent to assess simple negligence occurring . . . without expert testimony to establish the standard of ordinary care." Nowacki v. Cmty. Med. Ctr., 279 N.J. Super. 276, 292 (App. Div. 1995). This is not one of those cases.

19

In this case, in the hierarchal setting of a multi-disciplinary medical team providing care to a hospitalized patient, plaintiff alleges that the overnight duty nurses charged with monitoring her as the hospitalized patient were negligent in that care. To assess a deviation in the standard of care in such a setting, one must know the procedures, protocols, and scope of duties of the licensed professional nurses in such circumstances. An expert is required for that explanation. Such information is outside of the realm of common knowledge. And, importantly, considerations of patient autonomy must be added to the consideration of the requisite professional standards in this matter.

D.

The right of patient autonomy is prescribed by N.J.S.A. 26:2H-12.8(e), which states, "[e]very person admitted to a general hospital as licensed by the Department of Health . . . shall have the right . . . [t]o refuse treatment to the extent permitted by law." Thus, absent special circumstances, providers may not force a patient to undergo an invasive procedure where a competent patient does not consent to that procedure.

The right to control one's own body is a basic societal right, long recognized in the common law:

> No right is held more sacred, or is more carefully guarded by the common law, than the right of every

20

> individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. . . . "The right to one's person may be said to be a right of complete immunity: to be let alone."
>
> [In re Conroy, 98 N.J. 321, 346 (1985) (quoting Union Pac. Ry. Co. v. Botsford, 141 U.S. 250, 251 (1891)).]

Equally important as "the doctor's role to provide the necessary medical facts" is "the patient's role to make the subjective treatment decision." Id. at 347. "Thus, a competent adult . . . has the right to decline to have any medical treatment initiated or continued." Ibid.

The right to make "decisions concerning one's body is also protected by the federal constitutional right of privacy." Id. at 348. This Court in In re Quinlan held that the right of privacy, affirmed by the United States Supreme Court, "is broad enough to encompass a patient's decision to decline medical treatment under certain circumstances," even if that decision might lead to the patient's death. 70 N.J. 10, 40 (1976).

## IV.

Applying those legal principles to the facts of this case, we conclude plaintiffs did not satisfy the common knowledge exception and therefore were not relieved of their obligation to provide an affidavit of merit as required by the Affidavit of Merit Statute.

21

We reject the Appellate Division's conclusion that "common sense dictates that some action should have been taken when the nurses were confronted with the sudden termination of Linda's medical treatment." Cowley, 456 N.J. Super. at 292.

We disagree with the Appellate Division that this case "presents the circumstance of an alleged obvious act of omission, rather than an affirmative action that clearly bespoke negligence," id. at 291, thus not requiring the "weeding out" of plaintiffs claims. That approach allows plaintiffs to circumvent the Affidavit of Merit Statute by disguising complex negligence cases with common knowledge allegations as to acts of omission. Determining whether action should or should not have been taken is not enough. Jurors cannot be allowed to speculate as to whether a procedure conformed to the required professional standards of care. Schueler, 43 N.J. at 345. Allowing the Appellate Division's decision to stand, which permits jurors to speculate that some action should have been taken, rather than requiring a determination of what action should have been taken to comply with the applicable standard of care expands application of the common knowledge exception to speculation.

The true question in this matter is much more complex. This is not simply a case of failure to follow a physician's order. The issue for the jury is

not whether a nurse may ignore a physician's order, but rather what steps are required of a nurse when a patient refuses reinsertion of an NG Tube after its removal. Included in that assessment will be considerations about a patient's exercise of a right to refuse treatment. And resolution of that issue -- determination of what action, if any, should be taken under circumstances like those presented here -- ultimately requires expert opinion as to the appropriate standard of care, as well as the submission of an affidavit of merit.

The essential facts of this case as pled are not in dispute: defendants inserted plaintiff's NG Tube pursuant to the physician's order; plaintiff removed the tube and subsequently refused reinsertion. This case thus involves the proper procedures and protocols involving reinsertion of an NG Tube, complicated by the right of a patient to refuse medical treatment and the serious implications that stem from such a refusal. The medical issue presented requires expert medical proofs concerning the requisite standard of care in these settings, especially when treating a patient who refuses treatment.

Refusal of care forces medical professionals to walk the fine line between providing a patient with appropriate care and ensuring the patient's right to autonomy is respected. A determination of what action should or may be taken is a difficult path to navigate for a medical provider. That same

determination is even more difficult when entrusted to lay jurors with little to no medical training.

A jury does not have common knowledge in regard to what should be done in this situation. The standard of care for a nurse in this case requires clarity on what should have been done, and the effect of a patient's refusal on that mandate. The issue of what is required of a nurse once refusal occurs goes beyond the common knowledge of an average juror. Therefore, plaintiffs were required to submit an affidavit of merit to establish the standard of care for defendants in this case.

Pursuant to N.J.S.A. 2A:53A-29, where a plaintiff fails to provide an affidavit of merit within the statutorily mandated timeframe, it shall be deemed a failure to state a cause of action unless the plaintiff satisfies an exception to the affidavit of merit requirement. Here, plaintiffs neither submitted an affidavit of merit nor satisfied an exception to that requirement. They therefore failed to state a cause of action under N.J.S.A. 2A:53A-29, which requires dismissal with prejudice for noncompliance.

V.

We reverse the judgment of the Appellate Division and dismiss the complaint with prejudice.

24

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.