734 A.2d 778

THE ESTATE OF ANGELINA A. CHIN BY ROBERT CHIN AS ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM, AND ROBERT CHIN, INDIVIDUALLY, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. ST. BARNABAS MEDICAL CENTER, TERESA LEIB AND NANCY HOFGESANG, DEFENDANTS–APPELLANTS AND CROSS–RESPONDENTS, AND DR. HERBERT GOLDFARB, DEFENDANT–RE-

SPONDENT AND CROSS–RESPONDENT, AND C.R. BARD INC.,
DRS. JOHN DOE 1–10 (FICTITIOUS NAMES, REAL NAMES
PRESENTLY UNKNOWN) AND NURSES JANE DOE 1–10 (FIC-
TITIOUS NAMES, REAL NAMES PRESENTLY UNKNOWN)
AND XYZ CORPORATIONS 1 & 2 (FICTITIOUS NAMES, REAL
NAMES PRESENTLY UNKNOWN) AND IMMACULA LOUIS-
CHARLES, DEFENDANTS.

Argued February 16, 1999—Decided July 28, 1999.

458

*George J. Kenny* argued the cause for appellants and cross-respondents (*Connell, Foley & Geiser* attorneys; *Mr. Kenny* and *Ernest W. Schoellkopff,* on the brief).

*Harold A. Sherman* argued the cause for respondent and cross-appellant (*Mr. Sherman,* attorney; *George W. Conk,* of counsel).

*Melvin Greenberg* argued the cause for respondent and cross-respondent (*Greenberg Dauber & Epstein,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This case requires the Court to consider the application of the doctrine first developed nearly twenty-five years ago in *Anderson v. Somberg,* 67 *N.J.* 291, 338 *A.*2d 1, *cert. denied,* 423 *U.S.* 929, 96 *S.Ct.* 279, 46 *L.Ed.*2d 258 (1975). In that decision, a medical malpractice case, the Court held that where a blameless and unconscious patient suffers an injury, the defendants charged with malpractice or fault bear the burden of proving their non-culpability for the plaintiff's injury.

The case before the Court involves a patient who died from an air embolism when gas was introduced into her bloodstream during a surgical procedure. The nature of the fatal injury was such that it was certainly the result of the negligent use of a medical instrument, but it was unclear who was at fault. This medical malpractice suit was brought against all the defendants who had a possible role in the events leading to the patient's death: the doctor who performed the procedure; the nurses in the

operating room; the hospital; and the manufacturer of the medical instrument used in the operation.

The central issue posed in this appeal is to what extent the burden of proof in respect of liability should shift to defendants rather than remain with plaintiff. In addition, we are asked to consider whether the doctrine of common knowledge, which allows the jury to determine the negligence of professionals without expert testimony concerning professional standards of care, is applicable to this case.

## I

Angelina Chin died at the age of forty-five from a massive air embolism during a diagnostic hysteroscopy at St. Barnabas Medical Center. An hysteroscopy is a procedure used to determine abnormalities in a woman's uterus. The doctor uses an hysteroscope, a wand-like instrument with a lens at one end, to view the walls of a woman's uterus on a television monitor. The physician's view of the uterus is enhanced by stretching the uterine walls with a continuous flow of fluid into the uterus. Typically, this type of medical procedure involves minimal risk. In the case of Ms. Chin, however, gas was pumped into her uterus rather than fluid, causing the gas to be introduced into her coronary arteries and resulting in the air embolism that killed her. The record clearly demonstrates that the embolism was the direct result of an incorrect hook-up of the hysteroscope.

Ms. Chin's treating physician, defendant Dr. Herbert Goldfarb, performed the procedure using an hysteroscope manufactured by defendant C.R. Bard, Inc. This type of hysteroscope, called the Hystero–Flo Pump, uses a pump driven by compressed nitrogen to create a vacuum that forces fluid to be drawn into a tube. The fluid passes through the tube, into the hysteroscope unit and finally into the patient's uterus. In order to perform this function, the Bard Hystero–Flo Pump has several tubes. An "irrigation tube" draws fluid into the woman's uterus and a "suction tube" draws waste fluid out of the uterus. Both are connected to the

pump. A third tube connects the nitrogen source to the pump. Lastly, an "exhaust hose" carries the by-product of the nitrogen that drives the pump; it is attached to the gas line coming off the pump. When the exhaust hose arrives from the manufacturer, it is attached by three wire clips to indicate that it should remain away from the operating field and remain non-sterile.

In addition to Dr. Goldfarb, three nurses were in the operating room during this procedure. Defendants Nurse Teresa Leib and Nurse Immacula Louis–Charles were assigned to the procedure. Because Leib and Louis–Charles had no experience, familiarity, or training on the Hystero–Flo Pump, they asked defendant Nancy Hofgesang, a nurse who had some experience with the equipment, to assist. She acted as circulating nurse, although she was not officially scheduled by the hospital to be there.

During Ms. Chin's operation, one of the tubes was incorrectly connected to the hysteroscope, causing a closed circuit pathway that permitted the nitrogen gas to enter Ms. Chin's uterus and resulted in the embolism. Defendants presented several theories regarding which tube was wrongly attached. Because Dr. Goldfarb removed the tubes from the pump shortly after Ms. Chin went into cardiac arrest, their exact configuration was ascertainable only by inference.

Plaintiff Robert Chin, individually and as administrator *ad prosequendum* of the Estate of Angelina A. Chin, brought suit against defendants Dr. Goldfarb, Nurses Leib, Louis–Charles, and Hofgesang, St. Barnabas Medical Center and C.R. Bard for the death of his wife. At trial, defendants presented conflicting testimony regarding which party or parties incorrectly hooked up the apparatus. At the close of evidence, defendant C.R. Bard moved for a directed verdict. The trial court granted the motion and none of the remaining parties argue that C.R. Bard is liable for the death of Ms. Chin.

The trial court submitted plaintiff's case to the jury under the principles set forth in *Anderson v. Somberg, supra*, 67 *N.J.* 291, 338 *A.2d* 1. The court instructed the jury that the entire burden

of proof shifted to defendants, explaining that "there must be a verdict against at least one defendant in this case because obviously somebody did something wrong." The court also instructed the members of the jury that they were permitted to use their common knowledge as lay persons in deciding whether the nurses had in fact breached their duty of care to the decedent in this case. No expert testimony on the appropriate nursing standards of care was presented at trial.

The jury awarded plaintiff two million dollars in damages. It apportioned liability against the several defendants: Dr. Goldfarb, 20% liable; Nurse Leib, 20% liable; Nurse Hofgesang, 25% liable; St. Barnabas Medical Center, 35% liable. Nurse Louis–Charles was found not liable for the death of Ms. Chin. The trial court thereafter granted the hospital and nurses' motion for judgment notwithstanding the verdict, reasoning that the case was improperly submitted under *Anderson v. Somberg, supra,* and the doctrine of common knowledge. The trial court then entered a judgment against Dr. Goldfarb alone for the entire two million dollar judgment, plus interest.

Dr. Goldfarb appealed, and the Appellate Division reversed, ruling that the jury was properly instructed both in the doctrine of *Anderson* and in the doctrine of common knowledge. 312 *N.J.Super.* 81, 711 *A.*2d 352 (1998). The hospital and Nurses Leib and Hofgesang (hospital defendants) petitioned for certification, and plaintiffs cross-petitioned. We granted both the petition and cross-petition for certification. 156 *N.J.* 408, 719 *A.*2d 640 (1998).

## II

The primary issue in this case is the application of the principles set forth in our plurality opinion in *Anderson v. Somberg, supra,* 67 *N.J.* 291, 338 *A.*2d 1. In that case, the Court rejected the traditional allocation of the burden of proof; rather than resting with the plaintiff, the burden of proof was shifted to the defendants. Thus, in a case governed by *Anderson,* the jury is instructed that at least one defendant must be found liable and that the

defendants bear the burden of exonerating themselves from liability.

The facts in *Anderson v. Somberg* help in understanding the reasoning behind this exception to the usual allocation of burdens of proof. In *Anderson,* a surgical instrument broke during surgery and was lodged in the plaintiff's spinal canal, requiring multiple surgeries and resulting in severe and permanent physical injuries. The plaintiff, who was unconscious at the time, could not be blamed for the mishap. The plaintiff sued his physician, the hospital, the medical supply distributor and the manufacturer of the instrument. No explanation other than the negligence or fault of one of the defendants was available as the cause of the accident. Nevertheless, because the plaintiff could not prove which defendant caused the accident, the jury returned a verdict of no cause of action for each of the defendants. The evidence led to the inference that the break in the medical instrument may have been caused by weak metal, a crack during manufacture, cumulative misuse by other surgeons, or misuse by the operating surgeon. Hence, one, some or all of the defendants indisputably caused the instrument to break; a determination that no defendant was responsible would be an unjust result. In order to avoid the injustice resulting from the failure of liability against any defendant, this Court sustained the Appellate Division's determination that "at least one of the defendants was liable for plaintiff's injury," and held that the entire burden of proof shifts to the defendants. *Anderson, supra,* 67 *N.J.* at 298, 338 *A.*2d 1.

Here, the hospital defendants argue that *Anderson v. Somberg* requires a shifting only of the burden of going forward, but that the burden of persuasion remains with the plaintiff. They rely on *Maciag v. Strato Medical Corp.,* 274 *N.J.Super.* 447, 644 *A.*2d 647 (App.Div.1994), as support for this proposition. That case interpreted the Court's plurality determination in *Anderson* as merely shifting the burden of going forward with the evidence to the defendants in an *Anderson*-type case.

■ The principle recognized in *Anderson* has its origin in the doctrine of alternative liability. That doctrine recognizes that where a plaintiff is harmed by two or more defendants, but it is uncertain which defendant caused the harm, each defendant must sustain the entire burden of proof with regard to liability and prove his or her own non-culpability. *Summers v. Tice*, 33 *Cal.*2d 80, 199 *P.*2d 1 (1948); *Restatement (Second) of Torts* § 433B(3) (1965); *see Shackil v. Lederle Laboratories*, 116 *N.J.* 155, 173, 561 *A.*2d 511 (1989); *Anderson v. Somberg, supra*, 67 *N.J.* at 302, 338 *A.*2d 1.

■ The Court in *Anderson* recognized the distinction between the burden of production and the burden of persuasion and that the construct of burden of proof embraces these related but distinct elements. The Court specifically addressed the insufficiency of a "mere shift in the burden of going forward" with the evidence. *Anderson, supra* at 300, 338 *A.*2d 1. It acknowledged and distinguished the traditional common law doctrine of *res ipsa loquitur*, which requires only an explanatory rather than exculpatory account of defendants. *Id.* at 300–01, 338 *A.*2d 1. A critical difference is that in a case in which the plaintiff was unconscious and is clearly blameless, and all potential defendants are before the court, then only the putative defendants can be at fault and at least one defendant must be culpable. *Id.* at 302, 338 *A.*2d 1. In that setting, the Court ruled, defendants must not only come forward to explain the cause of plaintiff's injuries, but also must convince the jury that they individually are not responsible. *Ibid.* As articulated by Justice Pashman in *Anderson v. Somberg*, "where an unconscious or helpless patient suffers an admitted mishap not reasonably foreseeable and unrelated to the scope of the surgery," and all possible defendants that could have caused plaintiff's harm were joined before the court, defendants must "prove non-culpability, or else risk liability for the injuries suffered." *Id.* at 298, 338 *A.*2d 1. We reaffirm that principle and hold that in a case such as this, the entire burden of proof shifts to the defendants.

Our support of this principle has been consistent and clear. *E.g. Myrlak v. Port Auth. of N.Y. and N.J.*, 157 *N.J.* 84, 100, 723 *A.*2d 45 (1999) ("The *Anderson* type cases utilize collective *res ipsa loquitur* in that both the burden of going forward with evidence and the burden of persuasion are shifted to the defendants."); *Anderson v. Picciotti,* 144 *N.J.* 195, 210, 676 *A.*2d 127 (1996) ("In a few exceptional cases [ ] the burden of proof on some issues may shift to the defendant."). We have also noted that *Anderson* is an exception limited to a particular set of circumstances: medical malpractice cases in which all the possible defendants are before the court. *Shackil, supra,* 116 *N.J.* at 173, 561 *A.*2d 511 (acknowledging *Anderson* rule and noting that it was limited to "one factual context."). Although the *Anderson* doctrine is applicable in a narrow set of factual circumstances, it is nonetheless firm in its application to those circumstances when they arise. *Ibid.* Accordingly, we disapprove of the holding in *Maciag, supra,* 274 *N.J.Super.* 447, 644 *A.*2d 647, that only the burden of going forward is shifted to the defendants in medical malpractice cases where the plaintiff was unconscious at the time of injury.

■ Under the principles of *Anderson v. Somberg,* the plaintiff must show three things in order to shift the burden of proof to the defendants. First, the plaintiff must herself be entirely blameless. The fact pattern to which the principles of *Anderson* most readily apply is where a plaintiff was "clearly helpless or anesthetized" when her injury occurred. *Myrlak, supra,* 157 *N.J.* at 100, 723 *A.*2d 45. Second, the injury must be one that bespeaks negligence on the part of one or more of the defendants. Third, all the potential defendants must be before the court. That is, all those defendants who participated in the chain of events causing plaintiff's injury must be represented. *Shackil, supra,* 116 *N.J.* at 174, 561 *A.*2d 511.

■ This case presents a fact pattern that mirrors that presented in *Anderson v. Somberg.* All three requirements for the application of *Anderson* have been met. Angelina Chin, who was

unconscious, helpless, and utterly blameless, suffered a fatal injury that bespeaks negligence on the part of one or more of the defendants. It is not contested that the air embolism could have been caused only by negligent use of the hysteroscope. All the potential defendants, that is, all those who participated in the chain of events leading up to Ms. Chin's injury, were sued in this case.

■ The hospital defendants argue that the verdict cannot be supported by the evidence and raise the possibility that the jury rendered a verdict against them in response to the compulsion of the jury charges. That argument echos Justice Mountain's original criticism of the plurality decision in *Anderson v. Somberg:*

> The absence of sufficient evidence upon which a verdict might justly rest, coupled with the compulsion to reach a verdict against *someone,* removes from the case any semblance of rationality.
>
> [67 *N.J.* at 312, 338 *A.*2d 1 (Mountain, J., dissenting).]

The imputation of irrationality, however, is unfounded. Jurors are not required to find all the defendants liable. They are enjoined to weigh the evidence carefully and admonished to consider the role of each defendant. The verdict in this case reflects that the jury reached its determination conscientiously on sufficient evidence. The jurors thoroughly considered the evidence and exonerated Nurse Louis–Charles. Consistent with the jury's verdict, all the testimony indicated that this nurse was not at fault.

■ The hospital defendants also argue that because the case against the manufacturer, C.R. Bard, was dismissed, the case against them should be dismissed as well. Implicit in that argument is the suggestion that not all potentially responsible defendants were present when the case was submitted to the jury.

The basis of the *Anderson* principles is the certainty that one or more of the defendants participating in the events surrounding the accident was negligent. *Anderson, supra,* 67 *N.J.* at 304, 338 *A.*2d 1. For this reason, all potential defendants must be included in the litigation. That was done here with the inclusion of C.R. Bard, the manufacturer. The case against C.R. Bard was dis-

missed at the close of evidence, and the dismissal itself was based on the evidence presented. The dismissal under those circumstances simply reflects the right of defendants—consistent with their burden—to produce evidence to exculpate themselves. Defendant C.R. Bard successfully demonstrated that the Hystero–Flo Pump was distributed in perfect condition and that, when properly used, the pump was not dangerous. As the Appellate Division pointed out, the pump "did not malfunction or break, and there was no expert evidence to establish a design defect." 312 *N.J.Super.* at 91, 711 *A.*2d 352. In this case, the pump was negligently hooked-up resulting in this tragic death. Because no other defendant challenged the trial court's ruling in this regard, we must agree with the lower courts that the defendant manufacturer met its entire burden of proof and in so doing established its non-culpability.

■ The jury, weighing the conflicting testimony and contradictory evidence, found various levels of liability among defendants. There is nothing irrational about these findings of fact and they are supported by the evidence. The standard for reviewing a judgment notwithstanding the verdict is whether, when all evidence is viewed in the light most favorable to the non-moving party, reasonable minds might differ about the moving party's culpability. *Caterinicchio v. Pittsburgh Corning Corp.*, 127 *N.J.* 428, 437, 605 *A.*2d 1092 (1992); *Dolson v. Anastasia,* 55 *N.J.* 2, 5–6, 258 *A.*2d 706 (1969).

■ At the beginning of the surgical procedure, Nurse Hofgesang, acting as a circulating nurse, removed the packing containing sterile tubing from the operating room cabinet, opened it and presented the package to Nurse Louis–Charles, the scrub nurse. While circulating nurses may act off the sterile field of the operation, obtaining the equipment for the sterile nurses and doctors, scrub nurses remain sterile throughout the procedure and do not circulate around the operating room. Nurse Louis–Charles handed all the non-sterile tubing to Nurse Hofgesang, while placing the sterile irrigation tube on Ms. Chin's abdomen for use

during the procedure. Nurse Hofgesang apparently was responsible for hooking up the gas line to the nitrogen gas regulator and hooking up the exhaust tube to the gas line. Nurse Louis–Charles then asked Nurse Leib for a suction tube. Nurse Leib kept the non-sterile end of the suction tube, which was to be connected to a suction canister. Nurse Louis–Charles placed the sterile end of the suction tube on the patient's abdomen for Dr. Goldfarb to connect to the scope in the patient's uterus.

The evidence was consistent with two potential versions of the events. Either the non-sterile end of the suction tube was improperly connected to the exhaust hose, or the sterile end of the suction tube was improperly connected to the outflow port of the hysteroscope. Either of these misconnections could have created the closed circuit that killed Ms. Chin.

Because Nurse Louis–Charles did not connect any tubing, retained control only over two sterile tubes that were not part of the closed circuit, and was exonerated by Dr. Goldfarb's expert witness, the jury's finding that she was not liable was not against the weight of the evidence. As for the other hospital defendants, there was ample evidence to enable the jury to find that either one of the circulating nurses misconnected the suction tube to the exhaust hose and that Dr. Goldfarb was partly responsible for this mishap because he did not supervise the procedure adequately.

As pointed out by the Appellate Division, because the hysteroscope and its various tubes were disconnected in the immediate aftermath of the accident, the only source of information is the conflicting witness testimony. 312 *N.J.Super.* at 95, 711 *A.*2d 352. The fact that the evidence may also support a different outcome does not render the jury's verdict irrational or against the weight of the evidence. The evidence supports a coherent explanation of the events leading to the death of Ms. Chin is consistent with the jury's allocation of liability and reflects the "evaluation of [the witnesses'] credibility and the inferences to be drawn from facts as found by [the jury]." *Ibid.*

In sum, there was inadequate support for granting a judgment notwithstanding the jury's verdict. Accepting as true all the evidence supporting defendant Goldfarb, who opposed the motion, we find that reasonable minds could differ, and therefore the hospital defendants' motion for judgment notwithstanding the verdict was improperly granted by the trial court. *Caterinicchio, supra,* 127 *N.J.* at 437, 605 *A.*2d 1092.

### III

The trial court instructed the jurors that they may consider their own common knowledge in evaluating whether the hospital defendants had breached their duty of care to Ms. Chin. The hospital defendants argue that the nurses' actions should have been evaluated only with reference to the professional nursing standard of care.

The general rule in malpractice cases is that "evidence of a deviation from accepted medical standards must be provided by competent and qualified physicians." *Schueler v. Strelinger,* 43 *N.J.* 330, 345, 204 *A.*2d 577 (1964). Only in the "unusual medical malpractice case" will the common knowledge doctrine be invoked. *Rosenberg ex rel. Rosenberg v. Cahill,* 99 *N.J.* 318, 325, 492 *A.*2d 371 (1985). The doctrine of common knowledge permits exception to the general rule; when it is applied, expert testimony is not needed to establish the applicable standard of care. *Schueler, supra,* 43 *N.J.* at 345, 204 *A.*2d 577. "The trial of such a case is essentially no different from 'an ordinary negligence case.'" *Rosenberg, supra,* 99 *N.J.* at 325, 492 *A.*2d 371 (citation omitted).

In some medical malpractice cases, the jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts. The doctrine of common knowledge is appropriately invoked where the "carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience."

*Rosenberg, supra,* 99 *N.J.* at 325, 492 *A.2d* 371; *see Klimko v. Rose,* 84 *N.J.* 496, 504, 422 *A.2d* 418 (1980) (applying common knowledge doctrine to chiropractor who continued to apply pressure to patient's neck after patient became unconscious). Thus, the doctrine of common knowledge applies to a case in which the experience possessed by lay persons, without the explanations of experts, would enable a jury to determine that a defendant acted without reasonable care. "The basic postulate for application of the doctrine therefore is that the issue of negligence is not related to technical matters peculiarly within the knowledge of medical or dental practitioners." *Sanzari v. Rosenfeld,* 34 *N.J.* 128, 142, 167 *A.2d* 625 (1961).

The trial court determined that the evidence appropriately enabled the jury to rely on its common knowledge in determining whether any of the defendants breached their duty of reasonable professional care. After the jury had returned its verdict, however, the trial court granted judgment in favor of the hospital and the nurses notwithstanding the verdict, on the basis that it was error to have allowed the jury to consider and rely on its common knowledge in determining the issue of negligence.

The trial court was right the first time. At trial, counsel for the hospital defendants conceded that "if there is a hook-up which is incorrect, that . . . is a matter of common knowledge and a jury can draw the inference that there was professional negligence." An attempt by plaintiff's expert, a physician, to offer testimony on the professional standards of care that should be applied to nurses was overruled by the court on defendants' objections. The basis for that ruling and objection, however, was that the expert, a medical doctor, was not qualified to testify on professional nursing standards. That ruling itself may have been problematic. *Cf. Rosenberg, supra,* 99 *N.J.* at 334, 492 *A.2d* 371 (holding in chiropractic malpractice case, medical doctor was qualified to render expert opinion concerning chiropractic standard of care).

Nevertheless, this case did not require expert evidence concerning professional standards of nursing care. Rather, the case

"hinged primarily on the jury's determinations regarding who did what with the exhaust line, rather than with regard to professional standards of care." 312 *N.J.Super.* at 93, 711 *A.*2d 352. Like other common knowledge cases, the mistake was obviously the result of negligence. *See Klimko, supra,* 84 *N.J.* 496, 422 *A.*2d 418; *Sanzari,* 34 *N.J.* 128, 167 *A.*2d 625 (allowing doctrine of common knowledge where dentist caused patient's death by administering anesthesia without inquiring into history of hypertension); *Tramutola v. Bortone,* 118 *N.J.Super.* 503, 512–13, 288 *A.*2d 863 (App.Div.1972) (holding expert not required where physician failed to inform patient of needle left in patient's body after medical procedure); *Becker v. Eisenstodt,* 60 *N.J.Super.* 240, 158 *A.*2d 706 (App.Div.1960) (ruling that common knowledge sufficient to determine malpractice in case where physician applied caustic liquid in treating patient after rhinoplasty, thereby severely disfiguring her); *Steinke v. Bell,* 32 *N.J.Super.* 67, 70, 107 *A.*2d 825 (App.Div.1954) (holding that expert evidence not required in malpractice case where dentist extracted wrong tooth).

Ms. Chin's injury was caused by an incorrect hook-up of the hysteroscope, which introduced gas into her uterus and bloodstream. All the parties agreed that Ms. Chin's death was caused by an erroneous hook-up of the apparatus. Expert testimony was not required to establish that only a lack of reasonable care or negligence by one or more of the defendants could cause this medical accident. No party contested the fact that the misconnection was the result of negligence on the part of at least one defendant. Each defendant simply insisted that he or she was not the party individually responsible.

Recognizing that the common knowledge of lay persons is not infallible, this Court reasoned that the "remedy for inaccuracy is then the right of those who dispute the common knowledge to produce proof to the contrary." *Klimko, supra,* 84 *N.J.* at 504, 422 *A.*2d 418. The hospital defendants were well aware that they were required to prove their lack of culpability in order to avoid liability. Had the hospital defendants indeed believed that evi-

dence of professional standards of care would have belied a finding of negligence on their part, they could have presented expert testimony to this effect.

## IV

We affirm the judgment of the Appellate Division and remand for an entry of judgment in accordance with the jury's verdict.

*For affirmance and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.