**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0710-21

CAROL VARSOLONA and
RICHARD VARSOLONA, wife
and husband,

     Plaintiffs-Appellants,

v.

JERSEY SHORE UNIVERSITY
MEDICAL CENTER and
MATTHEW PHILLIPS, R.N.,

     Defendants-Respondents.

_____

Argued October 11, 2022 – Decided October 26, 2022

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2048-19.

Steven L. Kessel argued the cause for appellants (Drazin and Warshaw, PC, attorneys; John R. Connelly, Jr., on the brief).

Erin A. Bedell argued the cause for respondents (Orlovsky Moody Schaaff Conlon Bedell McGann &

Gabrysiak, attorneys; Erin A. Bedell, of counsel; Elizabeth A. Driscoll, on the brief).

PER CURIAM

Plaintiffs Carol and Richard Varsolona appeal from the October 7, 2021 order granting summary judgment to defendants Jersey Shore University Medical Center (JSUMC) and Matthew Phillips, R.N. We affirm, substantially for the reasons expressed by Judge Linda Grasso Jones in her well-reasoned and thoughtful opinion.

On July 19, 2018, Carol[1] was admitted to JSUMC for a craniotomy involving a resection of a left parietal meningioma. The next day, she fell while attempting to use the commode, striking the back of her head. Three days later, Carol fell again and jammed her right middle finger under a doorway. She claimed her first fall caused her to "suffer[] cognitive decline, headaches, memory impairment, anxiety, depression, and [a] hearing impairment." Further, she alleged "the trauma" from her first fall "prolonged her recuperation period, leading to development of blood clots." Additionally, Carol asserted her second fall caused her to sustain a "residual bump on [her] finger."

In June 2019, plaintiffs commenced a civil action for compensatory

---

[1] We use Carol's first name for ease of reference, considering plaintiffs share the same surname. By doing so, we intend no disrespect.

A-0710-21

damages against JSUMC and Phillips, the nurse assigned to care for Carol after her surgery. In their complaint, plaintiffs alleged defendants "fell below generally accepted standards of medical care with respect to . . . overseeing [Carol] to prevent falls." JSUMC and Phillips filed an answer the following month.

In February 2021, the trial court entered a case management order, fixing deadlines for the parties to conduct depositions and exchange expert reports. Subsequently, plaintiffs submitted an expert report from Karen Antaky, R.N., who opined "to a reasonable degree of medical probability . . . the nursing staff failed to meet the prevailing professional standard of care related to fall prevention and patient safety" during Carol's stay at JSUMC in July 2018.

Regarding Carol's first fall, Antaky concluded Phillips "failed to ensure that fall prevention was in place, specifically by assisting [Carol] to a chair but neglecting to use a chair alarm." Antaky also opined Phillips "failed to ensure that fall precaution prevention was consistently instituted whether [Carol] was in . . . bed or sitting in the chair." Further, Antaky stated that "[h]ad the chair alarm been correctly placed in the chair, the alarm would have been activated when [Carol] attempted to get up from the chair[,] alerting the staff and potentially preventing the initial fall."

3 A-0710-21

As to the second fall, Antaky opined Carol was "at high risk for falls having already experienced one fall and should have been assisted with the use of a rolling walker for additional support and for increased safety." Antaky concluded alternatively that staff "should have assisted [Carol] to a bedside commode . . . , thereby decreasing the risk of a fall and injury."

During discovery, Carol provided deposition testimony about her falls. When describing her initial fall, she testified she did not "really remember" the incident but recalled "sliding down, hitting the floor, and then a bunch of people . . . trying to pick [her] up." She also stated she "hit [her] skull, wherever the surgery was, on the wall and there was blood on the wall." Regarding her second fall, Carol recounted, "I had two girls with me. And when I was getting up . . . I started falling over and my fingers went underneath the door . . . . And my middle finger hurt a lot. I got a bump on it that I never had before."

Defendants moved for summary judgment, seeking dismissal of the complaint with prejudice. They alleged that notwithstanding Antaky's expert opinion, plaintiffs failed to demonstrate the symptoms Carol allegedly suffered were caused by her falls at JSUMC. Plaintiffs opposed the motion, contending they did not need testimony from an expert linking Carol's identified symptoms to the falls.

4

After hearing argument on October 7, 2021, Judge Grasso Jones granted the motion for summary judgment and dismissed the complaint. In her eleven-page opinion, Judge Grasso Jones explained her reasons for granting summary judgment, noting that although Carol alleged

> she . . . suffered from certain symptoms as a result of the [first] fall[,] . . . [she] . . . presented no expert evidence that the symptoms that she complains of are related to her [first] fall. Specifically, [Carol] contends that as a result of the first fall, in which she hit her skull, she suffers from a loss of depth perception or peripheral vision; cognitive decline, headaches, and memory impairment.
>
>     . . . .
>
> [Carol] has not presented any proof that she sustained a diagnosed injury as a result of her fall. . . . Even if [she] had provided expert proof that she sustained an injury in the fall, the symptoms that she complains of do not fall within the "common knowledge" of the average juror, but rather require medical testimony to connect the claimed symptom with a diagnosed medical condition.
>
> Finally, [Carol's] first fall occurred immediately follow[ing] brain surgery. If [Carol] is contending . . . she suffered simple pain and emotional distress as a result of the fall, in which she hit her head in the area of the surgery, distinct from the pain and emotional distress that she experienced as a result of the brain surgery performed by her physician, [she] would need to be able to distinguish . . . the pain that she experienced from the fall from the pain due to her brain surgery. . . . [Carol] has failed to show that any . . . pain

and emotional distress that she may claim results from the fall and not the surgery. The issue of what damages, if any, [she] would be entitled to receive for general pain resulting from her fall thus cannot be submitted to a jury for determination.

As to Carol's second fall, the judge found Carol did

not provide[] a medical diagnosis with reference to the bump on her finger. Had she done so, she would be permitted to request an award for the pain and suffering that she contends . . . she suffers or suffered as a result of the injury to her hand, as the court is satisfied . . . the claimed pain when pressing on the bump is something that the jury could conclude was the result of the hand injury, without expert testimony. . . . An expert would not be required to testify that simple pain and discomfort is the medical sequelae from the hand condition sustained by [Carol] as a result of the fall. There is no testimony available that [Carol] suffered a diagnosed medical condition as a result of the second fall[.] . . . [T]hus[,] [Carol] cannot proceed on her claim that she is entitled to an award of damages for pain and suffering as a result of the second fall.

On appeal, Carol contends Judge Grasso Jones erred in concluding expert opinion was required to establish Carol's falls caused her to suffer compensable injuries. We disagree.

Appellate courts review a trial court's grant of a summary judgment motion de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Rule 4:46-2 provides that the trial court must grant a summary judgment motion if "the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits . . . show that there is no genuine issue as to any material fact." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995).

In determining whether there is a genuine issue of material fact, the "court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "Summary judgment should be granted 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.'" Ibid. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

To sustain a prima facie cause of action for medical professional negligence, a plaintiff ordinarily must establish by competent expert evidence the relevant standard of care, a breach of that standard of care "and a causal connection between the breach and the plaintiff's injuries." Rosenberg v. Tavorath, 352 N.J. Super. 385, 399 (App. Div. 2002) (citing Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)). Critically, expert testimony is permitted "[i]f scientific, technical, or other specialized knowledge will assist

7

the trier of fact to understand the evidence or to determine a fact in issue," N.J.R.E. 702, but it is required when the subject matter is "so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." Cowley v. Virtua Health Sys., 242 N.J. 1, 19 (2020) (quoting Butler v. Acme Mkts. Inc., 89 N.J. 270, 283 (1982)). "A jury should not be allowed to speculate without the aid of expert testimony in an area where laypersons could not be expected to have sufficient knowledge or experience." Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. Div. 1997) (quoting N.J.R.E. 702, cmt. 2).

While Carol produced an expert report to establish defendants' alleged breach of the applicable standard of care, there is no expert medical evidence in the case linking her alleged injuries to her first fall. Carol also failed to provide a medical diagnosis for the bump on her finger, which allegedly resulted from her second fall. Under these circumstances, we agree with Judge Grasso Jones that the symptoms Carol allegedly suffered from her first fall were not the type a layperson would understand – without expert medical testimony – resulted from this fall, rather than the brain surgery she had one day prior to the fall. Thus, Carol needed to provide some competent expert testimony to link her pain and symptoms to her first fall.

A-0710-21

Similarly, we agree with Judge Grasso Jones's determination that a jury could understand — without expert testimony — Carol's claimed pain and discomfort stemming from her hand injury, but Carol still needed to "provide[] a medical diagnosis with reference to the bump on her finger." Absent a diagnosed medical condition attributable to her second fall, Carol could not demonstrate her entitlement to an award of damages for pain and suffering.

In sum, without the necessary expert testimony linking Carol's alleged injuries to her first fall or a diagnosed medical condition attributable to Carol's second fall, plaintiffs could not support their claims. Therefore, Judge Grasso Jones properly granted summary judgment in defendants' favor.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0710-21