**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3554-21

BONNIE ELLMAN,

    Plaintiff-Appellant,

v.

SAINT JOSEPH'S REGIONAL
MEDICAL CENTER and
RAJAPRIYA MANICKAM,

    Defendants-Respondents.

_____

Argued January 29, 2024 – Decided February 16, 2024

Before Judges Chase and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2346-21.

Bonnie Ellman, appellant, argued the cause pro se.

Richard J. Tamn, Jr. argued the cause for respondents (Krompier & Tamn LLC, attorneys; Richard J. Tamn, Jr., of counsel and on the brief; Jason Michael Altschul, on the brief).

PER CURIAM

Appellant Bonnie Ellman appeals from the trial court's March 17, 2022 order dismissing her medical malpractice complaint with prejudice for failure to serve an affidavit of merit ("AOM") pursuant to N.J.S.A. 2A:53A-26 to -29, and the order denying her motion for reconsideration. Based on our review of the record and applicable legal principles, we affirm.

We summarize the facts developed in the record. On August 20, 2019, appellant's seventy-six-year-old mother, Carole Ellman,[1] was admitted to the medical intensive care unit at Saint Joseph's Regional Medical Center ("St. Joseph's") after being transferred from another medical facility. Dr. Rajapriya Manickam, M.D., was her attending physician at St. Joseph's. Upon admission, Ms. Ellman was suffering from numerous serious medical conditions including end-stage renal disease, atrial fibrillation, chronic obstructive pulmonary disease, hypertension, and congestive heart failure. She was unresponsive, dependent on a ventilator, and required dialysis.

Ms. Ellman developed septic shock, which was treated with antibiotics, and thrombocytopenia (low platelet count), which was treated with multiple platelet transfusions. She was also suffering from persistent lower

---

[1] We use the term "Ms. Ellman" to distinguish appellant's mother from appellant.

gastrointestinal bleeding. After an internal ethics consultation, Ms. Ellman was placed on do not resuscitate ("DNR") status due to medical futility. Ms. Ellman's condition continued to deteriorate. On September 6, 2019, she suffered severe low blood pressure that was progressively worsening despite treatment, and her pulse was feeble. She died later that day.

On July 8, 2021, appellant filed a complaint[2] against St. Joseph's and Dr. Manickam alleging they:

> [M]istreated [her] and ignored [her] directives concerning [her] mother's medical treatments. Despite [her] repeated objections, the defendants persisted in their malpractice which resulted in [her] mother's untimely death. The defendants[] fail[ed] to uphold professional standards of care[,] caused pain and suffering to [her] mother[,] and great emotional pain and distress to [her] as well.

On September 24, 2021, defendants filed their answer. Appellant was required to serve an AOM within sixty days of the answer, or by November 23, 2021. By letter dated September 29, 2021, defendants advised appellant she was required to serve an AOM by January 24, 2022, which included the sixty-day

---

[2] In the trial court, defendants did not contest appellant's standing to pursue a medical malpractice action concerning the medical care provided to her deceased mother.

A-3554-21

maximum extension allowable under the AOM statute. On November 2, 2021, defendants requested the court conduct a Ferreira[3] conference. On November 17, 2021, defendants forwarded to appellant a court notice advising her the AOM was due. On January 24, 2022, appellant sent a letter to the court in which she acknowledged she "was supposed to submit the [AOM] today January 24 . . ." and requested "a short extension for the production of the AOM until January 31 or a later date." Appellant never served an AOM.

Defendants moved to dismiss for failure to serve an AOM. On March 17, 2022, the court heard oral argument. Appellant opposed the motion contending "because of health issues [she] requested a short extension for the [AOM]." Appellant also argued the common knowledge doctrine applied because her mother "was starved to death, and . . . given high doses of Fentanyl." Appellant argued defendants claimed she was not getting nutrition "because of a gastric bleed, but she was[ not] even getting TPN [total parenteral nutrition] which I can – I can get an expert – the TPN is the I guess the alternative to standard nutrition." In an oral opinion, the court found no basis to grant a further extension because appellant was afforded the maximum 120-day period allowable under the AOM statute and still had not served an AOM as of the date

---

[3] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

of oral argument. The court also found the common knowledge doctrine did not apply. Appellant moved for reconsideration, which was denied. This appeal followed.

On appeal, appellant argues she was not required to serve an AOM based on the common knowledge doctrine and the doctrine of res ipsa loquitur. Appellant argues "anyone with above[-]average intelligence knows that food is necessary for sustaining life" and the "starvation of a human being is something that any juror could determine at trial." Appellant argues further, "the manner of [her mother's] death was due to factors and forms of negligence . . . [that] could be simply observed by members of a jury who assuredly possess and grasp the knowledge of the consequences of such neglect."

Whether a complaint is exempt from the AOM requirement is a legal determination subject to our de novo review. Triarsi v. BSC Grp. Servs., LLC, 422 N.J. Super. 104, 113 (App. Div. 2011). We review a decision on a motion for rehearing or reconsideration for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

"The [AOM] [s]tatute requires plaintiffs alleging malpractice against a licensed professional to include an affidavit from a medical expert in their filing[]" to demonstrate "there exists a reasonable probability the standard of

care exercised in the alleged malpractice fell outside the acceptable professional or occupational standards." Cowley v. Virtua Health Sys., 242 N.J. 1, 8 (2020). The statute prescribes the deadlines for filing an AOM:

> [i]n any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The [judge] may grant no more than one additional period, not to exceed [sixty] days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> [N.J.S.A. 2A:53A-27.]

The purpose of the statute is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Ferreira, 178 N.J. at 150 (quoting Hubbard v. Reed, 168 N.J. 387, 395 (2001)). Pursuant to the statute, a plaintiff must provide a defendant with "an affidavit that indicates the plaintiff's claim has merit." Fink v. Thompson, 167 N.J. 551, 559-60 (2001).

A-3554-21

The submission of an appropriate AOM is an element of a professional malpractice claim. Meehan v. Antonellis, 226 N.J. 216, 228 (2016). Failure to provide an AOM is "deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. "The failure to deliver a proper affidavit within the statutory time period requires a dismissal of the complaint with prejudice." Ferreira, 178 N.J. at 146-47.

There are limited exceptions to the AOM requirement. One such exception is the common knowledge doctrine, which "applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" Hubbard, 168 N.J. at 394 (quoting Est. of Chin by Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)). In common knowledge cases, a jury is permitted to supply the applicable standard of care "from its fund of common knowledge" and assess "the feasibility of possible precautions which the defendant might have taken to avoid injury to the plaintiff." Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961).

Examples of cases applying the common knowledge doctrine exception include extracting the wrong tooth, Hubbard, 168 N.J. at 396; pumping gas instead of fluid into a patient's uterus, Est. of Chin, 160 N.J. at 471; and filling

7

a prescription with medication other than the drug prescribed, <u>Bender v. Walgreen E. Co.</u>, 399 N.J. Super. 584, 591 (App. Div. 2008).

An AOM is also unnecessary in ordinary negligence actions against a licensed professional under the doctrine of res ipsa loquitur. <u>See</u> <u>Palanque v. Lambert-Woolley</u>, 168 N.J. 398, 406 (2001). In ordinary negligence cases, "defendant's careless acts are quite obvious, [and] a plaintiff need not present expert testimony at trial to establish the standard of care." <u>Ibid.</u> (citing <u>Est. of Chin</u>, 160 N.J. at 469-70). Under the doctrine of res ipsa loquitur, negligence may be inferred "where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there [was] no indication in the circumstances that the injury was the result of plaintiff's own voluntary act or neglect.'" <u>Buckelew v. Grossbard</u>, 87 N.J. 512, 525 (1981) (quoting <u>Bornstein v. Metro. Bottling Co.</u>, 26 N.J. 263, 269 (1958)).

The common knowledge and res ipsa loquitur doctrines are not applicable to the complex medical malpractice claims asserted in this case. This case involves the care of an elderly patient who was admitted to the intensive care unit with numerous underlying medical conditions. Appellant's allegations implicate decisions relating to the diagnosis and treatment of those serious and interrelated medical conditions. Appellant specifically contends defendants

A-3554-21

"committed malpractice by failing to provide . . . medical care, dialysis[,] and the basic necessities to sustain life such as food and water," and administered "a fatal overdose of fentanyl." She argues defendants "claimed [her mother] could not have nutrition due to a gastric bleed which is . . . not apparent in the autopsy conducted privately." Appellant continues, "[s]ince there was no gastric bleed, [her mother] was a candidate for regular nutrition and even if it were not possible, she could have been administered [total parenteral nutrition] . . . ."

Medical treatment and decision-making involving dialysis, the prescription of medication, the diagnosis and treatment of gastrointestinal bleeding, and the administration of total parenteral nutrition plainly are not matters within the common knowledge of the average juror. Appellant's contention that the failure to provide nutrition falls within the common knowledge exception is not persuasive. As appellant acknowledges, decisions relating to nutrition were complicated by the diagnosis of gastrointestinal bleeding. Relatedly, appellant's contention that defendants misdiagnosed the gastrointestinal bleeding is without question a matter outside the ken of the average juror. The decision to place Ms. Ellman on DNR status also involved the assessment of her overall medical condition and the futility of treatment options in light of ethical principles, matters a jury could not consider without

9

the benefit of expert testimony. The doctrine of res ispa loquitur does not apply for the same reasons.

Appellant was obligated to serve an AOM in this case and did not. As directed by the Legislature in the AOM statute, the court correctly determined appellant's complaint failed to state a claim under the controlling law and, as a result, was required to dismiss the complaint. The court did not abuse its discretion by denying the motion for reconsideration.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION