**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0484-23

JOSEPH POLIMEDA,
as Executor of the Estate of
DOMENICA POLIMEDA,

     Plaintiff-Appellant,

v.

M.R. OF TEANECK, LLC,
d/b/a TEANECK NURSING
CENTER,

     Defendant-Respondent.

_____

Submitted September 25, 2024 – Decided October 23, 2024

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5501-20.

Law Offices of Robert J. Hitscherich, LLC, attorneys for appellant (Robert J. Hitscherich, on the briefs).

Marshall Dennehey, attorneys for respondent (Walter F. Kawalec, III, and Eric L. Grogan, on the brief).

PER CURIAM

Plaintiff, Joseph Polimeda, as executor of the estate of decedent, Domenica Polimeda, appeals from the trial court's September 22, 2023 order granting summary judgement in favor of defendant, M.R. of Teaneck, LLC (Teaneck Nursing Center or defendant). Based on our review of the record and the applicable legal principles, we affirm.

I.

This appeal stems from the trial court's finding that plaintiff's nursing expert was precluded from offering an expert opinion regarding medical causation as it related to decedent's injuries.

Decedent was a resident of the Teaneck Nursing Center from June 2016 to November 2017. Decedent was ninety years old at the time. Upon her admission, she was diagnosed with various medical issues, including Alzheimer's disease, heart failure, hypertension, peripheral vascular disease, arthritis, and pneumonia. Decedent was described by defendant's nursing staff as "cognitively impaired, unable to make her own decisions[,] non-verbal . . . [and] incontinent of bowel and bladder."

While in the facility, decedent developed pressure ulcers in the lower back and buttocks areas. During her stay, plaintiff alleges the pressure ulcers

2

"progressed to Stage 4 . . . unstageable wounds on her sacrum and coccyx, amongst other injuries."

In September 2020, plaintiff filed suit alleging the Teaneck Nursing Center was negligent in the care and treatment rendered to decedent, causing her pain and suffering. Plaintiff further alleged the negligence ultimately contributed to her death.

In support of the nursing negligence claims, plaintiff retained Rose Marie Valentine, RN, LNHA, as a nursing expert, and she subsequently issued a report. Valentine opined defendant's nursing staff deviated from accepted standards of care in treating decedent. Among the criticisms, Valentine asserted the nurses failed to follow "procedures for wound care identification, prevention, and documentation [regarding] changes in [decedent's] skin integrity." She further claimed the nurses "[f]ailed to exercise adequate care in the supervision of [decedent] as mandated by the New Jersey Administrative Code" and "[f]ailed to apply evidence-based treatment modalities commensurate with wound assessment and classifications."

Valentine also addressed medical causation. She noted:

> As a direct and proximate result of the negligence, . . .
> the staff at Teaneck . . . caused [decedent] to sustain
> multiple pressure ulcers, which increased to the size of
> unstageable wounds, endure great physical pain and

A-0484-23

[were responsible] for extensive expenses for further medical and hospital care and treatment as pressure ulcers are[] slow in healing.

However, when Valentine was deposed and asked if she was offering medical causation opinions, she conceded, as a nurse, she was not qualified to offer opinions on causation. Specifically, she testified:

> Q:    So, am I correct that you have offered opinions that there were deviations from standards of care?
>
> A:    Correct.
>
> Q:    Are you offering any causation opinions?
>
> A:    No.
>
> Q:    Is that because as a nurse you cannot provide a medical causation opinion?
>
> A.    That is correct, I can only offer what I felt had contributed to causation, but I cannot offer a medical causation.

Following the close of discovery, defendant moved for summary judgment seeking dismissal of plaintiff's claims, arguing Valentine was precluded from offering medical causation testimony, and plaintiff had not offered any appropriate causation testimony from a physician. In opposition to the motion, plaintiff provided an affidavit from Valentine claiming she "misinterpreted the question" at her deposition regarding medical causation. She noted she "meant

4

to assert that [she] was giving an opinion as to causation as a result of the negligence" of the staff, which she claims "contributed to, and caused [decedent] to sustain multiple pressure ulcers."

On September 22, 2023, the trial court, as discussed more fully below, rendered an oral opinion granting defendant's summary judgment motion. The court determined Valentine was not qualified to offer medical causation testimony. Rather, plaintiff was required to retain a physician to provide such testimony.

This appeal followed.

## II.

Plaintiff argues the trial court erred in its failure to acknowledge that his nursing expert was qualified to provide an opinion as to the causation of decedent's injuries. He further asserts the court erred by failing to recognize that the common knowledge doctrine applies, and that no expert testimony was required to establish deviations from the standards of care and related medical causation issues. Plaintiff also contends there were issues of material fact which precluded summary judgment.

Our standard of review of a trial court's grant or denial of a motion for summary judgment is the same as that of the trial court, namely, whether there

5

is a genuine issue of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); Kopin v. Orange Prods., Inc., 297 N.J. Super. 353, 366 (App. Div. 1997). Where, as here, we primarily review the trial court's conclusion of law, we accord no deference to the trial court's "interpretation of the law and the legal consequences that flow from established facts" and apply a de novo standard of review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"To establish a prima facie case of negligence in a medical malpractice action, a plaintiff usually must present expert testimony to establish the relevant standard of care, the [medical provider's] breach of that standard, and a causal connection between the breach and the plaintiff's injuries." Rosenberg v. Tavorath, 352 N.J. Super. 385, 399 (App. Div. 2002) (citing Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)); see also Ptaszynski v. Atl. Health Sys., Inc., 440 N.J. Super. 24 (App. Div. 2015). "Absent competent expert proof of these three elements, the case is not sufficient for determination by the jury." Rosenberg, 352 N.J. Super. at 399.

A.

Plaintiff argues the trial court incorrectly determined Valentine was not qualified to offer a medical causation opinion. He contends our decision in State v. One Marlin Rifle, 319 N.J. Super. 359 (App. Div. 1999), misread N.J.S.A. 45:11-23(b), and we drew an improper distinction between a nursing diagnosis and medical diagnosis. He further maintains One Marlin Rifle is nearly twenty-five years old and "does not reflect the more recent trends in healthcare associated with a more open and collaborative approach to healthcare between medical doctors and nurses." Plaintiff also relies on unpublished authority.[1] We are unpersuaded by plaintiff's arguments.

The trial court noted defendant's argument was "compelling" regarding the non-applicability of the ipso facto doctrine. The court stated it could not conclude that because decedent did not have pressure ulcers when she was admitted to defendant's facility—and subsequently developed pressure ulcers— "the causation necessarily is due to a failure of the nurses." It added, "I [do not] think anyone would dispute that there can be other causes for these [pressure]

---

[1] An unpublished opinion does not constitute precedent, nor is it binding upon us, unless we are required to follow an unpublished opinion by reason of res judicata, collateral estoppel, the single controversy doctrine, or similar principle of law. R. 1:36-3.

A-0484-23

ulcers than failures of the nurses at the facility. There can be . . . other health issues that impact upon it . . . [that] need to be addressed." The court further commented that because decedent had significant comorbidities, "a doctor needs to be the appropriate one to diagnos[e] . . . causation." The court also addressed Valentine's retraction of her deposition testimony regarding causation. It noted she "tried to walk back" her testimony, but she "clearly said she [was not] offering [an] opinion on causation."[2]

Central to the parties' arguments is the interpretation of N.J.S.A. 45:11-23(b). That statute, in pertinent part, provides:

> The practice of nursing as a registered professional nurse is defined as diagnosing and treating human responses to . . . physical and emotional health problems, through . . . provision of care supportive to . . . well-being, and executing medical regimens as prescribed by a licensed . . . physician . . . . Diagnosing in the context of nursing practice means the identification of and discrimination between physical and psychosocial signs and symptoms essential to effective execution and management of the nursing

---

[2] We likewise have concerns regarding Valentine's affidavit contradicting her sworn deposition testimony because there was no explanation for why the question posed by defense counsel was "misinterpreted." The sham affidavit doctrine, relied upon by defendant, permits a court to reject self-serving certifications filed in opposition to a summary judgment motion that directly contradict a party's prior sworn representations under oath to create a genuine issue of material fact. See Shelcusky v. Garjulio, 172 N.J. 185, 201-02 (2002). However, we need not address the sham affidavit argument advanced by defendant because we rest our decision on other grounds.

8

regimen within the scope of practice of the registered professional nurse. Such diagnostic privilege is distinct from a medical diagnosis.

[(emphasis added).]

In One Marlin Rifle, we analyzed N.J.S.A. 45:11-23(b) in the context of a nurse providing a diagnosis of her former husband's medical condition. 319 N.J. Super. at 362. We concluded that the wife, who was a certified clinical nurse specialist and advanced practice nurse in mental health and psychiatric nursing, was not qualified to render an expert opinion "with respect to a medical diagnosis of her former husband's mental condition." Id. at 368. The former husband opposed the State's weapons forfeiture action following the dismissal of a domestic violence complaint the wife had filed against him on the ground that he did not "'pose a threat to public health, safety, or welfare' pursuant to N.J.S.A. 2C:58-3(c)(5)." Id. at 362.

We interpreted N.J.S.A. 45:11-23(b) to permit registered nurses to provide a "nursing diagnosis," as opposed to a "medical diagnosis." Id. at 369. We noted "[a] nursing diagnosis identifies signs and symptoms only to the extent necessary to carry out the nursing regimen rather than making final conclusions about the identity and cause [of] the underlying disease." Ibid. We added, "[h]ence, the statute recognizes a firm distinction between nursing diagnosis and

9

medical diagnosis." Ibid. We concluded that "[g]iven the statute's prohibition against a nurse providing such a diagnosis, the trial court's acceptance of such testimony was inappropriate even aside from issues of . . . potential bias of the witness." Id. at 369-70.

We are satisfied One Marlin Rifle[3] is controlling in this matter. Despite the factually dissimilar circumstances, we held there that a nurse was not qualified to render an expert opinion as to a diagnosis under N.J.S.A. 45:11-23(b). 319 N.J. Super. at 368. This prohibited diagnosis is equivalent to the diagnosis or causation opinion offered by Valentine here. While N.J.S.A. 45:11-23(b) recognizes that "[t]he practice of nursing as a registered professional nurse" includes "diagnosing and treating human responses to actual or potential physical and emotional health problems," the statute also clearly states that "[s]uch diagnostic privilege is distinct from a medical diagnosis."

The trial court here correctly concluded plaintiff cannot withstand defendant's summary judgment motion in the absence of a causation opinion from a qualified medical expert. As the court noted, a physician expert was required, under the facts of this case, to determine whether the alleged

_____

[3] We also note our Supreme Court has cited favorably to One Marlin Rifle. See, e.g., Ryan v. Renny, 203 N.J. 37, 50 (2010).

A-0484-23

negligence was a proximate cause of decedent's injuries.  Accordingly, the court did not err in granting summary judgment.

B.

Plaintiff next argues that the common knowledge doctrine applies here, thus no expert testimony was required to establish the standard of care or medical causation.  He contends because it is not disputed that the pressure ulcers developed during decedent's admission at defendant's facility, and defendant's nurses were responsible for her care, a lay person with common knowledge and experience could determine the standards of care were breached and caused decedent's injuries.

"In most negligence cases, the plaintiff is not required to establish the applicable standard of care."  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (citing Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)).  In those instances, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were.  The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken."  Id. at 406-07 (alterations in original) (quoting Sanzari, 34 N.J. at 134).  "Such cases involve facts about which 'a layperson's common knowledge is sufficient to

11

permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'" Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" Ibid. (alterations in original) (citation omitted) (first quoting Sanzari, 34 N.J. at 134-35; and then quoting Giantonnio, 291 N.J. at 42); see also N.J.R.E. 702 (permitting expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

The Supreme Court has explained that "when deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis, 219 N.J. at 407 (alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)); see also Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001) (holding expert testimony is not needed under the affidavit

of merit statute when the jury's "common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence") (quoting Est. of Chin, 160 N.J. at 469).  In cases where "the factfinder would not be expected to have sufficient knowledge or experience," expert testimony is needed because the jury "would have to speculate" regarding the standard of care.  Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).

There may be "exceptionally rare cases in which the common knowledge exception applies [if] an expert is not needed to demonstrate a defendant professional breached some duty of care 'where the carelessness of the defendant is readily apparent to anyone of average intelligence.'"  Cowley v. Virtua Health Sys., 242 N.J. 1, 17 (2020) (quoting Rosenberg v. Cahill, 99 N.J. 318, 325 (1985)); see also Hubbard, 168 N.J. at 394 ("[I]n common knowledge cases[,] an expert is not needed to demonstrate that a defendant breached a duty of care.").

After careful consideration, we conclude the common knowledge exception does not apply. Our case law establishes the common knowledge exception is properly applied in cases that "involve obvious or extreme error," Cowley v. Virtua Health Sys., 456 N.J. Super. 278, 290 (App. Div. 2018), rev'd

13

on other grounds, 242 N.J. 1 (2020) (citing Bender v. Walgreen E. Co., 399 N.J. Super. 584, 590 (App. Div. 2008)), such as: Hubbard, 168 N.J. at 396, where a dentist extracted the wrong tooth; Estate of Chin, 160 N.J. at 471, where a doctor pumped gas instead of fluid into a patient's uterus; and Bender, 399 N.J. Super. at 590-91, where a pharmacist filled a prescription with medications other than the drug prescribed.

The cases applying the common knowledge doctrine are readily distinguishable from the matter before us. The identification, assessment, diagnosis, and treatment of pressure ulcers in a patient such as decedent, who had significant co-morbidities, does not involve matters that are within the ordinary understanding and experience of a layperson. Rather, the standard of care and medical causation issues must be addressed by expert testimony. Accordingly, we conclude plaintiff's reliance on the common knowledge doctrine is misplaced. For these reasons, even when viewing the facts in the light most favorable to plaintiff, we find that the trial court properly granted summary judgment and dismissed plaintiff's complaint.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

14

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0484-23